[No. S148568. June 9, 2008.]

CELINE GUEYFFIER, Plaintiff and Respondent, v.
ANN SUMMERS, LTD., Defendant and Appellant.

COUNSEL

Jenkens & Gilchrist, Bryan Cave, Jed P. White, Glenn J. Plattner and Keith D. Klein for Defendant and Appellant.

Zelle, Hoffman, Voelbel, Mason & Gette, Squires, Sanders & Dempsey, Douglas J. Rovens, Marc J. Shrake and Jeffrey S. Renzi for Plaintiff and Respondent.

OPINION

**WERDEGAR, J.**—Does an arbitrator exceed his powers when he applies equitable defenses to excuse a party from performing a material condition of an agreement that provides the arbitrator may not modify or change any of the agreement's material provisions? We hold he does not.

Celine Gueyffier and Ann Summers, Ltd. (Ann Summers), a British retailer, had a franchise agreement under which Gueyffier was to open an Ann Summers store in Los Angeles. The attempted store opening was a failure, leading to claims by each party that the other had breached their agreement. As the contract required, the matter was arbitrated, and the arbitrator found for Gueyffier, concluding Ann Summers had failed to provide Gueyffier with promised training, guidance and assistance. In his written award the arbitrator found that for Gueyffier to have given Ann Summers written notice and at

least 60 days to cure these breaches, as the contract provided, would have been an idle act because the breaches were not curable.

The superior court confirmed the award, but the Court of Appeal reversed. The appellate court held the arbitrator had, by excusing Gueyffier's performance of the notice-and-cure clause, violated the contract's express prohibition against an arbitrator modifying or changing a material term of the contract and had thereby exceeded his powers within the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(4).[1] The court therefore ordered the award vacated under that statute.

We conclude the Court of Appeal erred in its application of section 1286.2. Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation. (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775–776 [94 Cal.Rptr.2d 597, 996 P.2d 699]; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375, 383 [36 Cal.Rptr.2d 581, 885 P.2d 994]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28 [10 Cal.Rptr.2d 183, 832 P.2d 899].) The parties here having included no effective limitation in their contract, as we discuss, the arbitrator did not exceed his powers by interpreting the contract to allow for equitable excusal of the notice-and-cure condition or by making a factual finding that notice would have been an idle act. The award therefore was not subject to vacation under section 1286.2, subdivision (a)(4).

FACTUAL AND PROCEDURAL BACKGROUND

Ann Summers is a retailer of lingerie and sex toys organized under the laws of, and headquartered in, the United Kingdom. Gueyffier is a French citizen who resides in California. In January 2000, the parties executed a written franchise agreement under which Gueyffier was to own and operate an Ann Summers store in Los Angeles.

Article 7.2 of the franchise agreement provided: "Franchisor shall not, and can not be held in breach of this Agreement until (i) Franchisor shall have received from Franchisee, promptly after Franchisee first learns of the alleged breach, a written notice specifying in detail the facts constituting the alleged breach; and (ii) Franchisor shall have failed to remedy the breach within a reasonable period of time after such notice, which period shall not be less

---

[1] That statute provides that, on petition, the superior court shall vacate a contractual arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

All further statutory references are to the Code of Civil Procedure.

than 60 days . . . . This is a material term of this Agreement and may not be modified or changed by any arbitrator in an arbitration proceeding or otherwise."

Article 20.1 of the agreement provided that, with certain exceptions inapplicable here, "any controversy or claim between Franchisor and Franchisee arising out of or relating to this Agreement or any alleged breach hereof" was to be submitted to binding arbitration before the American Arbitration Association under that organization's Commercial Arbitration Rules. The arbitration clause further provided: "In no event may the material provisions of this Agreement . . . be modified or changed by the arbitrator at any arbitration hearing."

In March 2001, Gueyffier opened her Ann Summers store in the Beverly Center shopping mall. According to the arbitrator's award, the shop met a "harsh" reception, with "tomatoes being thrown at the store and insults being yelled at Gueyffier." Gueyffier quickly closed the store, though she later reopened in the same location under the name, "What Lies Beneath."

In May 2001, Ann Summers demanded arbitration and Gueyffier counterclaimed. The American Arbitration Association's International Centre for Dispute Resolution appointed a single arbitrator, who conducted hearings on legal and factual aspects of the dispute from 2001 through 2004. In February 2005, by written award, the arbitrator ruled for Gueyffier. Ann Summers, the arbitrator found, had "failed to meet its obligations to provide operations manuals, training and assistance, and an advertising program." The consequence of the breach was "the disastrous opening of the Beverly Center store." Gueyffier was awarded $478,030 as consequential damages for the breach.

With regard to article 7.2's notice-and-cure provision, the arbitrator found as follows: "By the time Gueyffier was finally able to open the Beverly Center store, the effect of the breaches was not curable. Giving written notice to provide operations manuals, training and assistance, and an advertising program within a reasonable period of time would have been an idle act. Therefore, the requirement of giving sixty (60) days written notice (Article 7.2) is moot."

Gueyffier and Ann Summers filed petitions to, respectively, confirm and vacate the award. The trial court granted Gueyffier's petition to confirm the award and entered judgment in accord with the award.

The Court of Appeal reversed. On the issue of whether the arbitrator had exceeded his powers, the court determined, first, that the arbitrator, "in finding the notice requirement was moot, impliedly found plaintiff did not give notice of alleged breach."[2] The question to be answered was whether "the arbitrator exceeded his powers" by "excus[ing] the notice and cure requirement on mootness grounds." As both the notice-and-cure requirement and the prohibition on modifying material terms of the agreement were set out explicitly in the contract, the court reasoned, "the arbitrator modified and changed the explicit terms of the notice and cure requirement when he found it had been excused." Since the arbitrator had no authority to modify or change the notice-and-cure provision, his award had to be vacated under section 1286.2.

We granted Gueyffier's petition for review.

## DISCUSSION

■ On petition of a party to an arbitration (see §§ 1285, 1286.4), the superior court is to vacate an arbitrator's award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).) As we have explained in prior cases, however, this provision does not supply the court with a broad warrant to vacate awards the court disagrees with or believes are erroneous.

When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. (*Moshonov v. Walsh, supra,* 22 Cal.4th at pp. 775–777; *Advanced Micro Devices, Inc. v. Intel Corp., supra,* 9 Cal.4th at pp. 372–375; *Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 28.) Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for " '[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.' " (*Moshonov v. Walsh,* at pp. 775–776, quoting *Moncharsh v. Heily & Blase,* at p. 28.)

---

[2] Before reaching this issue, the Court of Appeal discussed at length the federal and international laws relating to arbitration, determining that in the circumstances of this case they did not preempt the vacatur provisions of section 1286.2. Neither party questions that holding, and no preemption issue was raised in the petition for review or answer.

■ An exception to the general rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers. (*Advanced Micro Devices, Inc. v. Intel Corp., supra,* 9 Cal.4th at pp. 375–376, 383.) "The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.] Awards in excess of those powers may, under sections 1286.2 and 1286.6, be corrected or vacated by the court." (*Id.* at p. 375.) The scope of an arbitrator's authority is not so broad as to include an award of remedies "expressly forbidden by the arbitration agreement or submission." (*Id.* at p. 381.)

The Court of Appeal held, and Ann Summers contends, that the parties did effectively limit the arbitrator's powers: they explicitly agreed in their franchise agreement that an arbitrator would have no power to "modif[y] or change[]" any material term of the contract, including the notice-and-cure provision of article 7.2. The arbitrator violated this express prohibition, the lower court held and Ann Summers argues, by excusing as futile Gueyffier's failure to give Ann Summers prompt notice of, and an opportunity to cure, its breaches.

We disagree with Ann Summers and the Court of Appeal. While the contract limitation on arbitral powers to change the parties' agreement was explicit, it did not unambiguously prohibit the arbitrator from *excusing performance* of a contractual condition where the arbitrator concluded performance would have been an idle act. The contract's no-modification provision would have been effective to bar an actual change or modification. Had the arbitrator, for example, decided the parties' agreement should be reformed by changing the required 60 days' notice to 30 days' notice, he would have exceeded his powers. But to excuse performance of a contract term in a specific factual setting is not, in ordinary usage at least, to "modif[y] or change[]" the term. The no-modification clause did not "explicitly and unambiguously" (*Advanced Micro Devices, Inc. v. Intel Corp., supra,* 9 Cal.4th at p. 383) bar the arbitrator from deciding that article 7.2's notice-and-cure provision was *inapplicable* on the facts of the case as he found them.[3]

■ The arbitrator was empowered to interpret and apply the parties' agreement to the facts he found to exist; included therein was the power to decide when particular clauses of the contract applied. In concluding the notice-and-cure provision was inapplicable on the facts as he found them, the arbitrator did no more than exercise this power. (See *O'Malley v. Wilshire*

---

[3] Had the parties wished to mandate that performance of material conditions never be excused, they could have done so by, for example, expressly agreeing that the arbitrator would have no power to "modify, change or excuse performance of" a material term.

*Oil Co.* (1963) 59 Cal.2d 482, 493 [30 Cal.Rptr. 452, 381 P.2d 188] [for arbitrator to interpret labor arbitration agreement as covering a particular dispute would not be to "amend, modify or otherwise change" the agreement]; *Schoenduve Corp. v. Lucent Technologies* (9th Cir. 2006) 442 F.3d 727, 734 [arbitrator did not " 'limit, expand or otherwise modify' " sales representation agreement by interpreting it as inapplicable to a particular transaction].) The no-modification clause could perhaps be *interpreted* as also precluding equitable excusal of a condition, but the arbitrator evidently did not adopt such an interpretation. As construction of the contract was for the arbitrator, not the courts, we cannot say he exceeded his powers, within the meaning of section 1286.2, subdivision (a)(4), by failing to adopt a particular interpretation of the agreement.

■ As Gueyffier points out, California law allows for equitable excusal of contractual conditions causing forfeiture in certain circumstances, including circumstances making performance futile. (See *O'Morrow v. Borad* (1946) 27 Cal.2d 794, 800 [167 P.2d 483]; *Root v. American Equity Specialty Ins. Co.* (2005) 130 Cal.App.4th 926, 939 [30 Cal.Rptr.3d 631]; *Russell v. Johns Manville Co.* (1971) 20 Cal.App.3d 405, 413 [97 Cal.Rptr. 634].) *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 314 [24 Cal.Rptr.2d 597, 862 P.2d 158], on which Ann Summers relies, is not to the contrary; indeed, we stated there that "nonoccurrence of a condition precedent may be excused for a number of legally recognized reasons." In any event, whether a California *trial court* properly could have excused the notice-and-cure condition in the circumstances of this case is not at issue here. The parties chose to resolve their dispute not in court but by private arbitration. As already explained, an arbitrator does not ordinarily exceed his or her powers by reaching an erroneous legal conclusion. (*Moshonov v. Walsh, supra,* 22 Cal.4th at pp. 775–776.)

Ann Summers takes issue with the arbitrator's factual finding that for Gueyffier to give notice of Ann Summers's asserted breaches would have been an idle act. Two of Ann Summers's alleged breaches (inadequate training and the provision of an inappropriate operations manual), the company asserts, occurred substantially before what the arbitrator called the "disastrous" opening of the Beverly Center store. Had Ann Summers been given notice of the inadequacies at that time, the company argues, it might effectively have cured the breaches and forestalled the disaster. But it was for the arbitrator to find the facts, not for the superior court or this court. The parties contracted to have the arbitrator, not the courts, hear and decide their dispute. (See *Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 28.)

We do not decide whether the arbitrator's conclusion that for Gueyffier to comply with the notice-and-cure condition would have been futile was

supported by the evidence before the arbitrator or by the arbitrator's other factual findings. Article 7.2 of the franchise agreement required Gueyffier to give notice "promptly after Franchisee first learns of the alleged breach." But as there is no record of the arbitration hearing testimony, we would have no way of knowing what the evidence showed as to the date Gueyffier first learned of the breaches. Nor did the arbitrator make any express finding on this point.[4] As the arbitration agreement did not require the arbitrator to support his award with written factual findings, however, he clearly did not exceed his powers by making the award without particular supportive findings.

To support its contention that the arbitrator exceeded his powers by excusing Gueyffier's performance of the notice-and-cure condition, Ann Summers relies on *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044 [9 Cal.Rptr.3d 286], *California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935 [75 Cal.Rptr.2d 1], and *DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809 [37 Cal.Rptr.2d 558]. All three decisions are readily distinguishable.

In *O'Flaherty v. Belgum, supra,* 115 Cal.App.4th at pages 1056–1061, a dispute arising out of the dissolution of a law partnership, the Court of Appeal held the arbitrator had exceeded his powers by ordering that the withdrawing partners forfeit their partnership capital accounts. Because both the partnership agreement and California case law provided (according to the appellate court majority) for a return of capital to withdrawing partners, the award contravened explicit limitations in the agreement's arbitration clause that the arbitrator would have no power " 'to grant any remedy which is either prohibited by the terms of this Agreement, or not available in a court of law.' " (*Id.* at p. 1057.)[5] The Gueyffier-Ann Summers agreement, however, did not limit the arbitrator to granting only that relief or applying only those defenses available in a court of law. Nor did the award here contravene an express, unambiguous limitation in the contract itself. As already discussed, the written award does not demonstrate the arbitrator violated the directive

---

[4] The arbitrator found Gueyffier had gone to the United Kingdom for a training program, which she "justifiably" abandoned as worthless, but he did not specify when that event occurred. But even if he had, or if the record established that the evidence before the arbitrator showed Gueyffier learned of some or all of the breaches at an early date, the arbitrator's finding that notice of the breaches would have been an idle act would still not be grounds for vacating the award. Again, the parties contracted for the arbitrator, not the courts, to find the facts and decide the legal issues necessary to resolve their dispute.

[5] The dissenting justice in *O'Flaherty v. Belgum* would have held the arbitrator had the authority to decide that neither California law nor the parties' agreement required an accounting of partnership capital under all circumstances and that the award therefore could not be vacated on these grounds. (*O'Flaherty v. Belgum, supra,* 115 Cal.App.4th at pp. 1098–1101 (dis. opn. of Grignon, J.).) We express no opinion on the merits of this question.

that he not "modify or change" a material term of the agreement; it shows only that he declined, on equitable grounds, to hold Gueyffier to the requirement she give prompt written notice of breach.

In *California Faculty Assn. v. Superior Court, supra,* 63 Cal.App.4th 935, the contract (a collective bargaining agreement for state university faculty) prescribed a strictly limited role for arbitrators in reviewing tenure decisions and, consistent with that agreement, the parties, on a faculty member's grievance, submitted to arbitration only the question of whether the university president " 'engage[d] in reasoned judgment' " in denying the grievant tenure. (*Id.* at p. 942.) The arbitrator, whose award directed tenure be granted, was held to have exceeded his powers because his opinion "clearly show[ed]" that he did not review the president's decision under that deferential standard but instead "substituted his own judgment for the president's" on the underlying question of whether the grievant had met the university's tenure standards. (*Id.* at p. 951.) The agreement here, in contrast, did not strictly limit the scope of arbitration; the arbitrator was empowered to decide "any controversy or claim" between the parties arising out of the agreement or its breach. Nor, as already explained, did the award clearly show the arbitrator, in excusing part of Gueyffier's performance on equitable grounds, acted in contravention of an explicit, unambiguous limitation on his agreed dispute-resolution authority.

Finally, in *DiMarco v. Chaney, supra,* 31 Cal.App.4th at page 1815, the appellate court held the arbitrator had exceeded his powers by refusing to make an award of attorney fees to the litigant he expressly found to be the prevailing party despite the contract's provision that " 'the prevailing party *shall* be entitled to reasonable attorney's fees and costs.' " The court in *DiMarco v. Chaney* found a direct, explicit contradiction between the contractual command and the arbitrator's refusal to award the prevailing party fees, whereas no such inescapable contradiction exists in this case. The franchise agreement did not unambiguously forbid the arbitrator's application of an equitable defense to Gueyffier's performance of the notice-and-cure condition. (See *Moshonov v. Walsh, supra,* 22 Cal.4th at pp. 778–779; *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787–788 [94 Cal.Rptr.2d 603, 996 P.2d 706].)

We conclude the Court of Appeal erred in holding the arbitrator exceeded his powers by declining, on equitable grounds, to enforce the notice-and-cure condition against Gueyffier. It follows the award should not be vacated under section 1286.2, subdivision (a)(4).

## Disposition

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with our opinion.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.