Filed 12/2/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAFARI ASSOCIATES, | D065684 |
| Petitioner, | |
| v. | (Super. Ct. No. 37-2013-0073712-CU-PA-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| ALAN TARLOV, | |
| Real Party in Interest. | |

PETITION for writ of mandate from the Superior Court of San Diego County,

Lisa C. Schall, Judge. Petition granted.

Solomon Ward Seidenwurm & Smith, Edward J. McIntyre, Norman L. Smith,

Tanya M. Schierling and Leah S. Strickland for Petitioner.

Seltzer Caplan McMahon Vitek, Michael A. Leone and Andrea N. Myers for Real

Party in Interest.

No appearance for Respondent.

I.

INTRODUCTION

Petitioner Safari Associates (Safari) and real party in interest Alan Tarlov arbitrated a dispute pursuant to a written agreement. The arbitrator awarded Safari damages, attorney fees, and costs. Safari petitioned to confirm the arbitration award in the trial court. In response, Tarlov filed a motion to modify or correct the award on the ground that the arbitrator acted in excess of his powers in awarding Safari attorney fees. Specifically, Tarlov contended that the arbitrator exceeded his powers by "void[ing]" the definition of prevailing party provided in the parties' agreement, and instead applying the definition of prevailing party specified in Civil Code section 1717, subdivision (b)(1).[1]

In opposition, Safari argued that the arbitrator had not exceeded his powers under the agreement, and that the arbitrator's application of section 1717 was, at most, a nonreviewable legal error. In the alternative, Safari maintained that the arbitrator had correctly applied the definition of prevailing party contained in section 1717 in awarding attorney fees because the agreement provided that it would be governed by California law, and California law is clear that the statutory definition is " 'mandatory . . . and

_____

[1]     Unless otherwise specified, all subsequent statutory references are to the Civil Code.
        Section 1717 provides in relevant part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . . [¶]  (b)(1) . . . [T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract."

2

contractual provisions conflicting with it are void.' " (Quoting *Wong v. Thrifty Corp.* (2002) 97 Cal.App.4th 261, 264.)

The trial court ruled that the arbitrator's decision to apply section 1717 was subject to judicial review, and concluded that the arbitrator had erred in failing to apply the definition of "prevailing party" contained in the parties' agreement. The trial court corrected the award by ruling that the definition of prevailing party contained in the parties' agreement applied and remanding the matter to the arbitrator for further proceedings to apply the agreement's definition of prevailing party in determining whether to award attorney fees.

Safari filed a petition for writ of mandate requesting that this court direct the trial court to vacate its order correcting the arbitrator's award. In its petition, Safari reiterates its argument that the arbitrator acted within the scope of his powers in awarding attorney fees, and that the trial court did not have the authority to review the propriety of the arbitrator's prevailing party determination.

California law is clear that "arbitrators do not 'exceed[] their powers' . . . merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775-776 (*Moshonov*).) In this case, the potential applicability of the definition of prevailing party contained in section 1717, subdivision (b)(1) was plainly within the scope of the controversy submitted to the arbitrator. In fact, the record unambiguously demonstrates that Safari and Tarlov extensively briefed this very issue in the arbitration. In addition, there is no provision in

3

the parties' arbitration agreement that "explicitly and unambiguously limited" the arbitrator's power to determine the applicability of section 1717 in awarding attorney fees. (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185 (*Gueyffier*).) Under these circumstances, the arbitrator acted within the scope of his powers in applying the definition of prevailing party found in section 1717, subdivision (b)(1) in awarding Safari attorney fees. Further, any error that the arbitrator may have committed would constitute legal error, which is not subject to correction in the trial court.

Accordingly, we grant Safari's petition and direct the trial court to vacate its order correcting the arbitration award, and to conduct further proceedings, consistent with this opinion, on Safari's petition to confirm the award.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Release Agreement containing the arbitration provision*

Tarlov is the former managing general partner of Safari. Safari and Tarlov entered into a Release Agreement (Agreement) to resolve certain claims relating to Tarlov's management of Safari.

The Agreement specified that Safari's claims for "reimbursement of monies paid by [Safari] for the personal expenses of [Tarlov] or Tarlov's family" were not subject to the release, and that the parties would make a good faith effort to resolve these personal expense claims. The Agreement further provided that the parties would submit any unresolved disputes concerning the personal expenses to binding arbitration pursuant to the following arbitration provision:

4

"5.4 <u>Dispute: Arbitration by JAMS</u>.  Any dispute about personal expenses that are to be reimbursed to [Safari] shall be determined by binding arbitration in San Diego, California before one (1) arbitrator.  The arbitration shall be administered by Judicial Arbitration & Mediation Services, Inc. ('JAMS') pursuant to its Streamlined Arbitration Rules and Procedures.  Judgment on the award may be entered in any court having jurisdiction.  This clause shall not preclude the parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.  The arbitrator may, in the award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.  For purposes of this Agreement, the term 'prevailing party' means the party, if any, that obtains substantially the relief sought in the arbitration."

Another provision of the Agreement provided that the Agreement "shall be governed by the laws of the State of California."

B.      *The arbitration*

The parties were unable to resolve all of their disputes concerning the personal expense claims.  Thus, pursuant to the Agreement, they submitted those claims to arbitration.  In its arbitration brief, Safari argued that Tarlov was required to pay, at a minimum, $768,228, to reimburse Safari for Tarlov's personal expenses that Safari had paid.  The arbitrator conducted an arbitration hearing, and issued an interim award determining that Tarlov was required to pay $152,611.48 to Safari.

Both Safari and Tarlov filed a motion for attorney fees, each arguing that it was the prevailing party.  In its brief, Safari explained that section 1717, subdivision (b)(1) provides that "the party prevailing on the contract shall be the party who recovered a *greater relief* in the action on the contract," while the Agreement states that " 'prevailing party' means the party, if any, that obtains *substantially the relief sought* in the

5

arbitration." (Italics added.) Safari argued that "[Section 1717]—not the 'prevailing party' provision of the [Agreement]—must control," because under well-established case law, "any definition of 'prevailing party,' inconsistent with the definition contained in section 1717 is void." Safari further contended that it was the prevailing party because the arbitrator found "that . . . Tarlov must repay more than $192,000—less an offset for money admittedly wrongly taken," and thus, Safari was the "party who recovered a greater relief in the action on the contract." (Quoting § 1717, subd. (b)(1).)

In his brief, Tarlov argued that the arbitrator was required to apply the definition of prevailing party specified in paragraph 5.4 of the Agreement. Tarlov further argued that, applying this definition, he was the prevailing party because he obtained " 'substantially' the relief sought in the arbitration." In support of this argument, Tarlov contended that Safari had obtained only a small percentage of the damages that it had sought in the arbitration.

After further briefing, the arbitrator issued a final award in favor of Safari in the amount of $401,455.53. The final award included the $152,611.48 in damages, as well as $211,620 in attorney fees and $37,224.05 in costs. In the award, the arbitrator determined that section 1717 "is applicable to the action between [Safari] and [Tarlov]." The arbitrator further concluded, "The definition of 'prevailing party' in [section 1717, subdivision (b)(1)] is controlling over the definition found in the [Agreement]. [Citations.] '[L]anguage in the attorney fee provision that conflicts with the prevailing party definition is void.' [Citation.]" Finally, the arbitrator found that Safari " 'recovered a greater relief on the contract,' " and that Safari was therefore the " 'prevailing party.' "

6

C.      *The parties' pleadings in the trial court*

Safari filed a petition in the trial court to confirm and enter judgment on the arbitration award.

In response, Tarlov filed a motion to modify or correct the arbitration award pursuant to Code of Civil Procedure section 1286.6, subdivision (b), on the ground that the arbitrator had "exceeded [his] powers" (*ibid.*) in awarding Safari attorney fees. Specifically, Tarlov argued that the arbitrator exceeded his powers in awarding attorney fees by applying the definition of "prevailing party" in Civil Code section 1717, subdivision (b)(1), rather than the definition of prevailing party provided in the Agreement. Tarlov contended that an arbitrator's power is "confined by the express limitations of the arbitration agreement," and that when an "arbitrator acts in disregard of such an express provision, he or she acts in excess of his or her powers." Tarlov maintained that the arbitrator in this case had acted in excess of his powers through his "decision . . . to void the prevailing party definition in the [Agreement]." Tarlov supported his motion with numerous documents from the arbitration, including the briefing that the parties had submitted to the arbitrator, in which they addressed which definition of prevailing party the arbitrator was to apply in determining whether, and/or to whom, to award attorney fees.

Safari filed an opposition to Tarlov's motion in which it argued that the law is clear that an issue submitted in arbitration is immune from judicial correction pursuant to Code of Civil Procedure section 1286.6, subdivision (b). Specifically, Safari argued, "[W]hen the parties submit the issue of 'prevailing party' and attorney fee entitlement to

7

an arbitrator, and the arbitrator interprets their agreement and awards fees, or does not, that decision—whether factually or legally correct, whether even reversible error in civil litigation—is not subject to correction under [Code of Civil Procedure section] 1286.6 as made 'in excess of' the arbitrator's powers." Safari contended that the parties had submitted the issue of their entitlement to attorney fees to the arbitrator, and that the trial court was therefore without authority to correct the arbitrator's attorney fees award. In the alternative, Safari argued that the arbitrator had properly applied the definition of prevailing party contained in section 1717, subdivision (b)(1) in awarding attorney fees.

D.    *The trial court's ruling*

The trial court held a hearing on Safari's petition to confirm the arbitration award and Tarlov's motion to correct the award. At the conclusion of the hearing, the trial court entered an order correcting the award and remanding the matter to the arbitrator for further proceedings. In its order, the trial court ruled that "[t]he arbitrator's finding that 'Civil Code [section] 1717 is applicable' to the arbitration proceeding and that the 'definition of "prevailing party" in Civil Code [section] 1717, [subdivision] (b)(1) is controlling over the definition found in the Release Agreement (Para. 5.4)' are subject to judicial review . . . ." The court further concluded that, "The arbitrator's finding that 'Civil Code [section] 1717 is applicable' to the arbitration proceeding was in error." The court "corrected" the arbitration award by stating that "the definition of 'prevailing party' in paragraph 5.4 of the Release Agreement must be applied," and remanded the matter to the arbitrator to determine "(1) the 'prevailing party,' if any, and (2) the amount of attorney fees and costs to be awarded the 'prevailing party,' if any."

8

E.     *This writ proceeding*

Safari timely filed a petition for writ of mandate. This court issued an order to show cause, stayed all further proceedings in the trial court, and invited Tarlov to file a return. Tarlov filed a memorandum in opposition to the petition and Safari filed a reply.[2]

III.

DISCUSSION

*The trial court erred in correcting the arbitrator's award*

Safari contends that the trial court erred in correcting the arbitrator's award. Safari maintains that the arbitrator acted within the scope of his powers, and that the trial court did not have the authority to review any error that the arbitrator may have committed.

A.     *Standard of review*

"[T]his court conducts a de novo review, independently of the trial court, of the question whether the arbitrator exceeded the authority granted him by the parties' agreement to arbitrate." (*California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 945; see *Advanced Micro Devices, Inc. v. Intel Corp.* (1996) 9 Cal.4th 362, 376, fn. 9 ["whether an award is in excess of the arbitrator's powers ' "is a question of law we review de novo on appeal" ' "].)

---

2      Because of its uncertainty regarding whether the trial court's order was appealable, in addition to filing a writ petition, Safari also filed an appeal of the trial court's order. We stayed the appeal pending our resolution of this writ proceeding. In light of our disposition granting the writ, we dismiss Safari's appeal as moot.

9

B.    *Governing law*

Code of Civil Procedure section 1286.6 specifies the grounds upon which a trial

court shall correct an arbitrator's award. That statute provides in relevant part:

> "[T]he court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that:
>
> "[¶] . . . [¶]
>
> "(b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted . . . ."

In *Gueyffier, supra,* 43 Cal.4th 1179, the Supreme Court outlined the following

law governing the question whether an arbitrator has exceeded his powers in rendering an

arbitration award such that the award is subject to correction pursuant to Code of Civil

Procedure section 1286.6:

> "When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. [Citations.]  Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case.  Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for ' "[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." ' [Citation.]
>
> "An exception to the general rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers.  [Citation.]  'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate.  [Citation.] Awards in excess of those powers may, under sections 1286.2 and

10

1286.6, be corrected or vacated by the court.' [Citation.] The scope of an arbitrator's authority is not so broad as to include an award of remedies 'expressly forbidden by the arbitration agreement or submission.' [Citation.]" (*Gueyffier, supra,* at pp. 1184-1185.)

Applying this law, the *Gueyffier* court considered whether an arbitrator exceeded his powers by rendering an award that included a finding that a party's failure to comply with a notice-and-cure provision in the parties' agreement was excused. The notice-and-cure provision provided: "This is a material term of this Agreement and may not be modified or changed by any arbitrator in an arbitration proceeding or otherwise." (*Gueyffier, supra*, 43 Cal.4th at p. 1183.) The *Gueyffier* court concluded that despite this limitation on the arbitrator's powers, the arbitrator had not exceeded his powers, reasoning:

> "While the contract limitation on arbitral powers to change the parties' agreement was explicit, it did not unambiguously prohibit the arbitrator from *excusing performance* of a contractual condition where the arbitrator concluded performance would have been an idle act. The contract's no-modification provision would have been effective to bar an actual change or modification. Had the arbitrator, for example, decided the parties' agreement should be reformed by changing the required 60 days' notice to 30 days' notice, he would have exceeded his powers. But to excuse performance of a contract term in a specific factual setting is not, in ordinary usage at least, to 'modif[y] or change[ ]' the term. The no-modification clause did not 'explicitly and unambiguously' [ccitation] bar the arbitrator from deciding that . . . [the] notice-and-cure provision was *inapplicable* on the facts of the case as he found them." (*Id.* at p. 1185.)

In a footnote following this language, the *Gueyffier* court added, "Had the parties wished to mandate that performance of material conditions never be excused, they could have done so by, for example, expressly agreeing that the arbitrator would have no power

11

to 'modify, change or *excuse performance* of' a material term." (*Gueyffier, supra,* 43 Cal.4th at p. 1185, fn. 3, italics added.)

The Supreme Court has squarely rejected the argument that there is a distinction in the law governing the scope of an arbitrator's powers between "the substantive merits of the arbitrated controversy and the 'ancillary' question of costs, including attorney fees." (*Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787 (*Moore*); see *Moshonov, supra,* 22 Cal.4th at p. 776.) As the *Moore* court explained, "Where the entitlement of a party to attorney fees under . . . section 1717 is within the scope of the issues submitted for binding arbitration, the arbitrators do not 'exceed[] their powers' ([Code Civ. Proc., §§] 1286.2, subd. (d), 1286.6, subd. (b)), as we have understood that narrow limitation on arbitral finality, by denying the party's request for fees, even where such a denial order would be reversible legal error if made by a court in civil litigation." (*Moore, supra*, at p. 784.)

In *Moore*, the parties' agreement contained an attorney fees provision and the "controversy was ordered to binding arbitration pursuant to an agreement to arbitrate 'all disputes, claims and controversies between us' and without, as far as the record shows, any judicially imposed limitation on the issues to be arbitrated." (*Moore*, *supra*, 22 Cal.4th at p. 786.) Under these circumstances, the *Moore* court concluded that the arbitrators had the power to "decide the entire matter of recovery of attorney fees." (*Id*. at p. 787.) The *Moore* court reasoned, "Having submitted the fees issue to arbitration, plaintiffs cannot maintain the arbitrators exceeded their powers, within the meaning of

12

[Code of Civil Procedure] section 1286.6, subdivision (b), by deciding it, even if they decided it incorrectly." (*Ibid*.)

Similarly, in *Moshonov, supra,* 22 Cal.4th 771, a companion case to *Moore*, the Supreme Court concluded, "[W]here an arbitrator's denial of fees to a prevailing party rests on the arbitrator's interpretation of a contractual provision within the scope of the issues submitted for binding arbitration, the arbitrator has not 'exceeded [his or her] powers' ([Code Civ. Proc.,] §§ 1286.2, subd. (d), 1286.6, subd. (b)) as we have understood that narrow limitation on arbitral finality." (*Moshonov, supra*, at p. 773.) In *Moshonov*, the parties prayed for attorney fees in various court pleadings, and subsequently submitted the "matter" to binding arbitration, without limitation as to the issues to be arbitrated. (*Id*. at p. 774.) Under these circumstances, the *Moshonov* court concluded, "The recovery or nonrecovery of fees being one of the 'contested issues of law and fact submitted to the arbitrator for decision' [citation], the arbitrator's decision was final and could not be judicially reviewed for error." (*Id*. at p. 776.)

C.    *Application*

The arbitration provision in this case expressly provides that the arbitrator is empowered to award attorney fees to the prevailing party in the arbitration. Further, the record demonstrates that Safari and Tarlov extensively briefed and argued the attorney fees issue in the arbitration, including whether the arbitrator should apply the definition of prevailing party specified in section 1717, subdivision (b)(1) or instead, the definition of prevailing party contained in the Agreement. "Having submitted the fees issue to arbitration, [Tarlov] cannot maintain the arbitrator[] exceeded [its] powers, within the

13

meaning of [Code of Civil Procedure] section 1286.6, subdivision (b), by deciding it, even if [the arbitrator] decided it incorrectly."[3]  (*Moore, supra,* 22 Cal.4th at p. 787.)

Contrary to Tarlov's contention in his opposition to Safari's writ petition,[4] the definition of "prevailing party" contained in the Agreement is not a "contract[ual] limitation on arbitral powers" of any kind (*Gueyffier, supra,* 43 Cal.4th 1179), much less an "explicit[] and unambiguous[]" limitation on the arbitrator's power to award attorney fees.  (*Ibid.*)  In *Gueyffier*, the notice-and-cure provision at issue provided that it could "not be *modified* or *changed* by any arbitrator."  (*Id.* at p. 1183.)  The *Gueyffier* court stated that although this provision was an "explicit" limitation on the arbitrator's powers to *modify* or *change* the notice-and-cure provision, it did not prohibit the arbitrator from *excusing* a party from providing notice and an opportunity to cure.  (*Id.* at p. 1185.)  Tarlov notes in his opposition that the *Gueyffier* court stated, " 'Had the arbitrator, for example, decided the parties' agreement should be reformed by changing the required 60 days' notice to 30 days' notice, he would have exceeded his powers.' "  (*Ibid.*)  Tarlov contends that this portion of *Gueyffier* demonstrates that where an arbitrator acts "to change one of the provisions from the parties' agreed term to a materially different term," he acts in excess of his powers.  We disagree.

---

3    We emphasize that we express no opinion as to whether the arbitrator erred in applying the definition of prevailing party in section 1717 rather than the definition specified in the Agreement.

4    Tarlov contends, "[T]here can be no dispute that the arbitrator exceeded the contractual limitations on his powers by rewriting the parties' agreed definition [of prevailing party]."

14

As noted above, the agreement at issue in *Gueyffier* explicitly precluded the arbitrator from modifying or changing the notice-and-cure provision. For this reason, the *Gueyffier* court stated that the arbitrator would have acted in excess of his powers if the arbitrator had modified the agreement by changing the notice provision. In contrast, in this case, as noted above, there is *no* provision limiting the arbitrator's powers in any respect, and there is certainly no provision providing that the prevailing party definition may not be "modified or changed by any arbitrator." (*Gueyffier, supra*, 43 Cal.4th at p. 1183.)

Further, if the parties in this case had intended to attempt to limit the arbitrator's *power* to apply a definition of prevailing party other than the definition contained in the Agreement, they could have used language evincing such an intent.[5] (See *Gueyffier, supra,* 43 Cal.4th at p. 1185, fn. 3 ["Had the parties wished to mandate that performance of material conditions never be excused, they could have done so by, for example, expressly agreeing that the arbitrator would have *no power* to 'modify, change or excuse performance of' a material term," italics added].) However, absent such language, we may not construe the provision in the Agreement defining the term "prevailing party," as being an "explicit[] and unambiguous[]" (*id*. at. 1185) limitation on the arbitrator's powers. To construe the Agreement's definition of prevailing party in such a fashion would be to intrude upon the "broad powers" (*ibid.*) of the arbitrator to decide "any question of contract interpretation, historical fact or general law necessary, in the

5    We need not decide whether such a provision would be unenforceable as violative of the public policy embodied in section 1717.

15

arbitrator's understanding of the case, to reach a decision" (*id*. at p. 1184), and would improperly expand the "narrow limitation on arbitral finality" (*Moore, supra,* 22 Cal.4th at p. 787), embodied in Code of Civil Procedure section 1286.6, in contravention of well-established law.

Tarlov's remaining contentions are no more persuasive. Tarlov contends that the arbitrator exceeded his powers because the arbitrator "explicitly contradicted" the Agreement by refusing to apply the parties' definition of prevailing party specified therein. (Citing *DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809 (*DiMarco*).)[6] In *DiMarco*, an arbitrator failed to award attorney fees to a prevailing party despite a provision in the parties' agreement that provided, "In any action, proceeding or arbitration arising out of this agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs." (*Id.* at p. 1812, fn. 1 & p. 1812.) The *DiMarco* court concluded that the arbitrator had exceeded his powers in light of the "direct, explicit contradiction between the contractual command and the arbitrator's refusal to award the prevailing party fees." (*Gueyffier, supra*, 43 Cal.4th at p. 1188, discussing *DiMarco*.)

To the extent that *DiMarco* can be read as holding that a trial court may vacate an arbitration award on the ground that the arbitrator "explicit[ly] contradict[ed]" the parties' agreement (*Gueyffier, supra*, 43 Cal.4th at p. 1188, discussing *DiMarco*), we decline to

---

6    Tarlov states that *DiMarco* is the "primary authority" on which he is relying.

16

follow such reasoning.[7] In our view, under the reasoning of *Gueyffier, supra*, 43 Cal.4th 1179, *Moore, supra,* 22 Cal.4th 782, and *Moshonov, supra,* 22 Cal.4th 771, a legally incorrect decision, even one that "explicitly contradict[s]" the parties' agreement, is just that—a legally incorrect decision, which is not subject to correction by a trial court. (See, e.g., *Moshonov, supra,* at p. 775 ["we [have] rejected the view that a court may vacate or correct the award because of the arbitrator's legal or factual error, even an error appearing on the face of the award"].)

In any event, even assuming that we were to conclude that *DiMarco* was decided correctly under the facts of that case, we are aware of no authority that would support the conclusion that an arbitrator acts in excess of his powers in refusing to apply a provision in the parties' agreement that the arbitrator determines is void as violative of public policy. In this case, as noted above, the arbitrator concluded that the Agreement's definition of prevailing party was void under California law. We decline to extend *DiMarco*'s reasoning to conclude that the arbitrator acted in excess of his powers in refusing to apply a provision that he determined violated California law.

---

7      We are not bound by the Court of Appeal's decision in *DiMarco*. (See *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 21 (conc. opn. of Baxter, J.) ["A Court of Appeal panel is free to disagree with a decision by another panel, division, or district, and may even reconsider its own prior decisions"].) The Supreme Court cited *DiMarco* in *Gueyffier*, *Moshonov*, and *Moore*, but did not endorse the reasoning of the *DiMarco* court in any of the three decisions. (See *Gueyffier, supra*, 43 Cal.4th at p. 1188 [distinguishing *DiMarco*]; see *Moshonov, supra,* 22 Cal.4th at p. 779 ["We need not decide whether *DiMarco*'s reasoning is correct"]; *Moore, supra,* 22 Cal.4th at pp. 787-789 [distinguishing *DiMarco* and stating that "this court has yet to decide" whether "an arbitrator's refusal to award fees expressly mandated by the underlying contract may be judicially corrected under [Code of Civil Procedure] section 1286.6")].)

Finally, we are not persuaded by Tarlov's argument that we may affirm the trial court's decision because Safari "reneged on its agreement" to apply the definition of prevailing party provided in the Agreement. As noted above, whether to apply the Agreement's prevailing party definition or the definition specified in section 1717, subdivision (b)(1) is a question that the *arbitrator* was tasked with determining. The *trial court* was not permitted to second-guess the arbitrator's decision on this issue in ruling on Tarlov's motion to correct the award.

Accordingly, we conclude that the trial court erred in correcting the arbitrator's award.[8]

---

[8] In light of our conclusion, we need not consider Safari's procedural argument that it was improper under Code of Civil Procedure section 1286.6 for the trial court to both correct the award and remand the matter to the arbitrator for further proceedings. Nor need we consider Safari's argument that the arbitrator correctly interpreted the contract and applied Civil Code section1717 in awarding attorney fees.

IV.

DISPOSITION

Let a writ of mandate issue directing the trial court to: (1) vacate its January 31, 2014 order correcting the arbitration award; and (2) to conduct further proceedings on Safari's "petition to confirm and enter judgment on the arbitration award," in a manner consistent with this opinion.  The stay issued on May 21, 2014 is vacated.  Safari is entitled to costs in the writ proceeding.

_____
                                                        AARON, J.

WE CONCUR:

_____
         HUFFMAN, Acting P. J.

_____
                IRION, J.

19