Filed 11/2/15  Kempler v. CLS Transportation CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GREG KEMPLER et al., | B256997 |
| Plaintiff and Respondents, | (Los Angeles County Super. Ct. No. BC473931) |
| v. | |
| CLS TRANSPORTATION LOS ANGELES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert L. Hess, Judge.  Affirmed.

Fox Rothschild, David F. Faustman, Yesenia M. Gallegos, Cristina K. Armstrong; Cole Schotz, Leo V. Leyva for Defendants and Appellants.

Capstone Law, Raul Perez, Glenna Danas, Ryan H. Wu; Initiative Legal Group, Mónica Balderrama for Plaintiffs and Respondents.

_____

Appellants seek to vacate arbitration awards rendered by three separate arbitrators, arguing that the arbitrators exceeded their authority by awarding excessive attorney fees. We find that the arbitrators acted within the scope of their authority, and we have no basis to question the arbitrators' reasoning or factual conclusions. Accordingly, we affirm the judgment confirming the arbitration awards.

## **BACKGROUND**

Respondents are former employees of CLS Transportation of Los Angeles LLC (CLS). In August 2006, Arshavir Iskanian filed a class action lawsuit against CLS on behalf of himself and similarly situated employees, alleging that CLS failed to pay overtime, provide meal and rest breaks, reimburse business expenses, provide accurate and complete wage statements, and pay final wages in a timely manner. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 361 (*Iskanian*).) Based on an arbitration agreement signed by Iskanian and other employees, CLS moved to compel arbitration, and the trial court granted the motion in March 2007. (*Ibid.*) Shortly after, our Supreme Court decided, in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*), that class waiver provisions in arbitration agreements were unenforceable under certain circumstances. In light of *Gentry*, we directed the trial court to reconsider its order granting the motion to compel arbitration and dismissing class claims.

On remand, CLS withdrew its motion to compel arbitration, and the parties litigated the case. (*Iskanian, supra,* 59 Cal.4th 348, 361.) After conducting discovery, Iskanian moved for class certification, and in October 2009, the trial court granted Iskanian's motion. (*Ibid.*) Most, if not all, respondents in this matter were members of the *Iskanian* certified class.

On April 27, 2011, the United States Supreme Court decided *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __ [131 S.Ct. 1740]. Soon after, CLS renewed its motion to compel arbitration and dismiss the class claims, arguing that *Concepcion* was new law that overruled *Gentry*. The trial court granted CLS's motion in June 2011, dismissing class claims and ordering the case to individual arbitration. (*Iskanian*, *supra*, 59 Cal.4th 348, 361.) The California Supreme Court eventually affirmed most aspects of that order

2

(except for a finding that Iskanian could pursue in court a representative action under the Labor Code Private Attorneys General Act of 2004 (the PAGA, Labor Code section 2698 et seq.)). (See generally *Iskanian, supra*, 59 Cal.4th 348.)

In September 2011, 61 former *Iskanian* class members opted out of the class action and the *Iskanian* appeal by filing individual demands for arbitration with the American Arbitration Association (AAA). There followed a protracted dispute between counsel for CLS and respondents over payment of arbitration fees, selection of the arbitrators, and potential consolidation of the arbitrations. In November 2011, respondents filed a lawsuit, *Kempler v. CLS Transportation Los Angeles LLC* (*Kempler*), seeking, among other things, an order compelling CLS to pay AAA fees and participate in individual arbitrations. Motions were filed by both sides pertaining to how the arbitrations would be conducted. Eventually, the *Kempler* trial court ordered the parties to select eight arbitrators to decide the 61 former employees' claims. In November 2012, AAA appointed eight arbitrators, all of whom had been agreed upon by both sides.

After arbitration commenced, respondents propounded discovery and various motions were filed. CLS made a number of increasing settlement offers to respondents, and all respondents eventually agreed to settle their claims, for amounts ranging from $2,000 to $6,000.

Pursuant to the arbitration agreement and the settlement agreements, respondents filed separate motions to recover attorney fees and costs with each of the eight arbitrators. Each respondent sought a pro rata share of fees incurred in the arbitrations and in the *Iskanian* and *Kempler* court actions. CLS opposed the motions, arguing that respondents' attorneys were not entitled to an award of any fees and costs, or, at most, should be awarded only those fees and costs incurred specifically in the arbitrations.

Each of the eight arbitrators reached a different result regarding the amount of fees and costs to be awarded. Awards varied widely. One arbitrator, who presided over arbitrations for seven claimants, awarded a total of $35,000 in fees and costs. Another, who arbitrated eight claimants' matters, awarded a total of $41,755.73. Meanwhile, the three arbitrators whose awards are the subject of this appeal awarded much more: Hon.

3

Kevin J. Murphy (Ret.), who arbitrated seven matters, awarded a total of $249,468 in fees and costs; Hon. Gabriel Gutierrez (Ret.), who arbitrated eight matters, awarded a total of $442,448; and Hon. William Stein (Ret.), who arbitrated seven matters, awarded a total of $174,832.

CLS petitioned the trial court to vacate the awards rendered by arbitrators Murphy, Gutierrez, and Stein. Respondents opposed these petitions and petitioned to confirm all of the arbitrators' awards. The trial court denied CLS's petitions to vacate. It subsequently confirmed all of the arbitration awards and entered judgment accordingly.

CLS timely appealed.[1]

## DISCUSSION

### I. Bases for the fees awards

Each respondent signed identical arbitration agreements. The agreement provides that any disputes "that may arise in connection with, arise out of or relate to" the arbitration agreement, or that "relates in any way, in whole or in part to [respondent's] hiring by, employment with or separation from [CLS], or any other dispute by and between [respondent], on the one hand, and [CLS], . . . on the other hand, shall be submitted to binding arbitration before a neutral arbitrator . . . ." The agreement further states: "[CLS] and [respondent] shall each pay their own attorneys' fees and costs incurred in connection with the arbitration, and the arbitrator will not have authority to award attorneys' fees and costs unless a statute or contract at issue in the dispute

---

[1] As reflected in the final judgment, the award issued by arbitrator Murphy pertained to CLS, as well as its affiliates, CLS Worldwide Services, LLC, Empire International Ltd., Empire/CLS Worldwide Chauffeured Services, and GTS Holdings Inc. (collectively, the corporate defendants). The award issued by arbitrator Gutierrez also pertained to the corporate defendants. The award issued by arbitrator Stein applied to the corporate defendants, as well as CLS's principal, David Seelinger. In addition to CLS, the corporate defendants and Seelinger appeal from the judgment. In this opinion, we generally refer to all appealing parties as CLS. Except for a brief footnote, in which appellants argue—but fail to show reversible error—that the Stein award should not have pertained to Seelinger, the parties' briefs do not differentiate between the appealing parties.

4

authorizes the award of attorneys' fees and costs to the prevailing Party, in which case the arbitrator shall have the authority to make an award of attorneys' fees and costs to the same extent available under applicable law. If there is a dispute as to whether [CLS] or [respondent] is the prevailing party in the arbitration, the Arbitrator will decide this issue."

The arbitrators found that fee awards were compelled by statute. Arbitrator Murphy determined that the eight respondents before him were entitled to an award of fees pursuant to Labor Code sections 218.5 (for nonpayment of wages upon termination) and 1194 (for failure to pay overtime wages). Arbitrator Gutierrez awarded fees under unstated sections of the Labor Code and Code of Civil Procedure section 1021.5 (for fees incurred as private attorneys general). Arbitrator Stein likewise found that fees were warranted under Code of Civil Procedure section 1021.5, as well as Labor Code sections 218.5 and 1194.

## II. **The arbitrators did not exceed their authority**

The scope of judicial review of an arbitration award is narrow. Courts do not question whether an arbitrator's reasoning was valid. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).) Nor do courts determine whether an arbitrator's award was supported by sufficient evidence. (*Ibid.*) Moreover, except in unusual circumstances, an arbitrator's decision is not reviewed for errors of fact or law. (*Ibid.*)

The *only* grounds upon which a court may vacate an arbitration award are set forth in Code of Civil Procedure section 1286.2. Subdivision (a)(4) provides that an award shall be vacated if: "The arbitrators exceed their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." CLS contends that the awards of arbitrators Murphy, Gutierrez, and Stein must be vacated pursuant to this provision. We review de novo, independent of the trial court, the issue of whether the arbitrators exceeded the authority granted to them by the arbitration agreement. (*California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 945.)

5

CLS's primary argument is that the three arbitrators whose awards are at issue exceeded their powers by awarding fees incurred, not only in arbitration, but also in the *Iskanian* and *Kempler* court matters.

Controlling authority resoundingly refutes CLS's position. In *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782 (*Moore*), the Supreme Court confronted the issue of whether an arbitration panel exceeded its powers by declining to award fees to plaintiffs who, if the matter were determined in court, would have likely been entitled to an award of fees. The court found that—since the fees issue was within the scope of issues submitted to arbitration—the panel did not exceed its authority, "even where such a denial order would be reversible legal error if made by a court in civil litigation." (*Id.* at p. 784.) It wrote: "The recovery or nonrecovery of fees being one of the 'contested issues of law and fact submitted to the arbitrator for decision' (*Moncharsh*, *supra*, 3 Cal.4th at p. 28), the arbitrators' decision was final and could not be judicially reviewed for error. 'The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.' (*Ibid.*)" (*Moore*, at p. 787.)

Similarly, in *Moshonov v. Walsh* (2000) 22 Cal.4th 771 (*Moshonov*), the defendants, apparent prevailing parties, argued that an arbitrator had no authority to deny them an award of attorney fees, given that the arbitration agreement provided for a fees award to the prevailing party in an arbitration brought to enforce the terms of the contract. The court found that the arbitrator acted within her authority by denying fees on the basis that action was not one to enforce the contract. (*Id.* at p. 777.) It held: "Although the parties, by agreement, can certainly exclude specific questions from arbitration, in the absence of such restriction an arbitrator has the power to decide the submitted matter on any legal or factual basis, whether or not any party has relied upon that particular basis." (*Ibid.*) Support for this holding was found in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367 (*AMD*), which itself held that an arbitrator's choice of relief did not exceed the arbitrator's powers as long as the relief "bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by

6

the arbitrator." The court "stressed the award may be based on a contractual interpretation 'implied in the award itself,' or even to a 'plausible theory' of the contract's intent, but cautioned an arbitrator *would* exceed his or her powers by awarding relief 'expressly forbidden by the arbitration agreement or submission.'" (*Moshonov*, at pp. 777-778, quoting *AMD*, at p. 381.) As interpretation of the contract underlying the dispute was a matter submitted to arbitration, an erroneous interpretation would amount to simply an error of law on a submitted issue, which does not constitute an excess of authority. (*Moshonov*, at p. 779.) So long as the decision "did not violate ""'an express and explicit restriction on the arbitrator's power,'"" consideration of the merits of the decision was unwarranted. (*Ibid.*)

More recently, in *Safari Associates v. Superior Court* (2014) 231 Cal.App.4th 1400 (*Safari*), the Fourth District found that an arbitrator did not exceed his powers by determining the prevailing party by reference to Civil Code section 1717, subdivision (b)(1), instead of employing the definition of "prevailing party" found in the controlling arbitration agreement. The court made no finding as to whether the arbitrator erred by applying Civil Code section 1717. (*Safari*, at p. 1411, fn. 3.) Rather, the court determined that, because the fees issue was submitted to arbitration, the arbitrator did not exceed his powers by deciding the issue, even if it was decided incorrectly. (*Id.* at pp. 1410-1411.) The agreement's definition of "prevailing party" was not an "'explicit[] and unambiguous[]' limitation on the arbitrator's power to award attorney fees." (*Id.* at p. 1411, citing *Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179 (*Gueyffier*)). The court further found that if the parties "had intended to attempt to limit the arbitrator's *power* to apply a definition of the prevailing party other than the definition contained in the Agreement, they could have used language evincing such an intent." (*Safari*, at p. 1411.)

Based on the reasoning of these opinions, we need not determine whether the three arbitrators actually awarded fees for work on *Iskanian* or *Kempler*, or, if they did, whether such awards would be legally or factually erroneous if made by a trial court. (See *Gueyffier*, *supra*, 43 Cal.4th 1179, 1186 [issue of whether a court could have made

7

the same decision as the arbitrator by excusing a condition in the parties' agreement was irrelevant].)  Instead, we simply determine whether the fees awards were within the scope of the arbitrators' powers.  We find it clear that they were.  The arbitration agreement allowed the arbitrators to award attorney fees if a statute at issue authorized an award of fees.  Each of the three arbitrators found that recovery of fees was compelled by statute, and each found that respondents were the prevailing parties.  The measure of those fees was a matter of the arbitrators' discretion.  To the extent that any arbitrator awarded a greater amount of fees than what could be properly awarded by a trial court, that excessive award would constitute, at most, an error of fact or law.  (See *Moshonov*, *supra*, 22 Cal.4th 771, 779.)

The arbitration agreement contains no express limitation on the attorney work that could be considered by an arbitrator in fashioning a fees award.  It does not explicitly prohibit awarding fees for work that preceded the arbitration proceedings.  Likewise, the agreement does not state, "the only fees that potentially may be compensable are those actually incurred by the claimant in this arbitration, and fees incurred outside of arbitration are not compensable" or specify a similar limitation.  "Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation." (*Gueyffier, supra,* 43 Cal.4th 1179, 1182.)  The awards at issue here are rationally related to a plausible interpretation of the arbitration agreement.[2]

---

[2]     Indeed, each arbitrator's award demonstrates that he specifically considered the issue of what sort of fees should be awarded.  Arbitrator Murphy wrote, "the issue of fees should not be viewed in a vacuum by ignoring all procedural history, overlapping issues, and necessary trial preparation tasks. . . .  In short, recovery should not be limited to fees incurred while the arbitration was pending before the undersigned, nor should they include all expenses accumulated since the inception of the lawsuit against CLS in March 2006."  Arbitrator Stein awarded fees incurred in *Kempler* because the case "was necessary to the resolution of these arbitrations," but denied fees incurred in *Iskanian*, except for fees related to discovery.  Arbitrator Gutierrez wrote:  "The hours that the attorneys at the claimants' law firms worked on the *Iskanian* action are not within the

8

Furthermore, the arbitration agreement's clause stating "the arbitrator shall have the authority to make an award of attorneys' fees and costs to the same extent available under applicable law" is not an express limitation prohibiting the arbitrator from considering certain legal proceedings when rendering an award. It also does not provide an opening to question the arbitrators' reasoning. "A provision requiring arbitrators to apply the law leaves open the possibility that they are empowered to apply it 'wrongly as well as rightly.'" (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1360.) Absent a clear agreement that legal errors constitute an excess of authority reviewable by the court, we are not empowered to determine whether the arbitrators awarded fees beyond those properly awarded under applicable law. (*Id.* at p. 1361.)

Finally, respondents' failure to submit detailed billing records did not preclude an award of fees. The arbitrators based their fee awards on declarations submitted by respondents' attorneys. Nothing in the arbitration agreement required anything more. The arbitrators apparently found this documentation sufficient, and we have no basis to second-guess their conclusions. (See *Moncharsh*, *supra*, 3 Cal.4th 1, 11 ["a court may not review the sufficiency of the evidence supporting an arbitrator's award"].)[3]

---

Arbitrator['s] jurisdiction to award attorney[] fees and costs." To the extent CLS contends that the arbitrators awarded a greater amount of fees than what these statements would indicate should be awarded, that excessive amount would merely be an error of fact or law, not an excess of authority.

[3]    We deny the request for sanctions made by respondents in their appellate brief.

## **DISPOSITION**

The judgment is affirmed.  Respondents shall recover their fees and costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

10