Filed 11/24/21  Old Trace Partners v. Sorensen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

| **California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.** |
| --- |

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
| --- | --- |
| OLD TRACE PARTNERS, L.P., et al., | H045706 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. 2014-1-CV-266849) |
| v. | |
| THEODORE G. SORENSEN, et al., | |
| Defendants and Appellants. | |

Appellants Theodore G. Sorensen, Gerald J. Sorensen, Gunn Management Group, Inc., and 40 Main Street Offices, LLC (collectively referred to as Developers) seek review of a judgment confirming a binding arbitration award.  They contend the arbitrator awarded remedies not available in a court of law, thus exceeding the power and authority given to him by the parties' binding arbitration agreement.  Finding no legal basis to review the judgment, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Respondents Old Trace Partners, L.P. (Old Trace), Daniel and Kimberly Nero (the Neros), Paul and Mary Ellen Klein (the Kleins), Alan Truscott (Truscott), and Fick Investment Group (Fick) (collectively referred to as Investors), filed a complaint against Developers related to the purchase and development of real property located at 40 Main

---

[1] We carefully considered the record in this case and include only those facts that are relevant to the issues addressed in this appeal.

Street in Los Altos, California. Investors alleged that Theodore and Gerald Sorenson (the Sorensons) prepared an investment prospectus/ project plan for the purpose of procuring investors, and in doing so, committed fraud by intentionally or negligently misrepresenting, concealing, and failing to disclose material facts. Investors further claimed that Gunn Management Group, Inc. (Gunn), the entity created by the Sorensons to manage the development project, breached its fiduciary duties by mismanaging the property and violating the operating agreement entered into by Developers and Investors to create 40 Main Street LLC (Main Street), a limited liability company designed to be an investment vehicle to acquire title to the property and build the building.

The project plan created by the Sorensons reflected the primary intention to build a three-story office building with 20 underground parking spaces, which would require revisions to several zoning ordinances. The plan included three "Alternative Development Scenarios," including one that would require no variance in the zoning ordinances. The project plan disclosed various risk factors, including the potential that the project could take longer and cost more than anticipated, that public objection could be stronger than anticipated, that the Los Altos City Council (City Council) might not approve the three-story office building, and that the required zoning variances might not be obtainable. The plan stated that the City Council had "already voted to increase Floor Area Ratios to allow 200% FAR in the downtown area; implementation is only subject to appropriate parking and traffic studies. It has been determined that these plans can be implemented based on a negative declaration and no Environmental Impact Report is required." The plan also indicated that a committee had recommended "an increase to 250% FAR for substantial parts of the downtown village including [the subject property]."

Investors each made an initial capital contribution towards the purchase of the property and for an interest in Main Street. Old Trace, the Neros, and the Kleins each

2

contributed $284,000 for a 10% interest, while Truscott and Fick contributed $142,000 for a 5% interest.

Developers and Investors, as "members,"[2] entered into an operating agreement (OA) "to form and provide for the governance of [Main Street] and the conduct of its business, and to specify their respective rights and obligations." As part of the OA, each member represented that he or she was an " 'accredited investor' as defined in Rule 50l(a) of Regulation D promulgated by the Securities and Exchange Commission (the 'SEC') under the Securities Act of 1933, as amended ('Securities Act')," and that he or she was "an experienced investor in unregistered and restricted securities of limited liability companies or limited partnerships speculative and high risk ventures." The signatories to the original OA agreed to submit "any dispute, controversy or claim arising out of or relating to [the OA], or any breach thereof. . ." to binding arbitration. The OA provided, "The arbitrator shall not have any power to alter, amend, modify or change any of the terms of [the OA] nor to grant any remedy which is either prohibited by the terms of [the OA], or not available in a court of law." The parties later signed two amendments to the OA, neither of which altered the types of disputes that required arbitration, or the powers of the arbitrator.

Developers commenced preparing the design and development of the office building; they submitted an entitlements application for approval of a three-story building with underground parking. After obtaining feedback from staff with the Los Altos Planning Department indicating that the planning department would support the building without underground parking, the entitlements application was modified. Ultimately, the

---

[2] " 'Member' shall mean each Person who (a) is an initial signatory to [the operating agreement] as a holder of a Percentage Interest or as a Profit Holders' Interest, has been admitted to the Company as a Member in accordance with the Articles or this Agreement. . . ."

planning department rejected the plan for the three-story building, as well as a later, reduced-in-size plan.

Old Trace filed an initial complaint against Developers in June 2014; in September 2014, the complaint was amended to include all Investors as plaintiffs. In the amended complaint, Investors alleged causes of action for intentional and negligent misrepresentation, concealment, false promise, breach of fiduciary duty and contract, constructive trust, accounting, declaratory relief, violations of Business and Professions Code section 17200, and receivership. They claimed Developers committed fraud when procuring investors for the project, and thereafter mismanaged the project. Relevant to the issues on appeal, Investors contended that Developers misrepresented the following: the City Council's plans for a "250% FAR increase" in the area where the project was located; the financial feasibility of including underground parking for the building; the financial prospects of the project if there were no changes in zoning laws; and, the ability to procure permission for a three-story building. Investors also alleged Developers made false promises that they would remove the current structure on the property and build a new office building, and create a profitable project even if the zoning limitations could not be changed. Investors sought an order that the OA and its amendments be deemed null and void, and for a lien on the property in an amount no less than the value of Investors' full investment in the project, with interest, among other relief. Investors did not explicitly set forth a cause of action for rescission.

Developers requested that the trial court order the matter to binding arbitration, in compliance with the terms of the OA. Over Investors' objection, the trial court granted the request, stayed the trial court action, and authorized the arbitrator to decide any arbitrability issue in the first instance.

In accord with the trial court's order, Investors submitted a demand for arbitration to JAMS, attaching the amended complaint to outline the relief they were requesting. They indicated in the demand that they were seeking "nullification of the fraudulently

4

induced [OA][,] any amendments and restatements of it, the return of [Investors'] full investment amounts plus interest or a lien on the property for that value," and additional relief. Investors also opined that the relief they sought was outside the scope of the arbitration clause in the OA, and thus they filed the lawsuit. They filed a motion asking the arbitrator to determine the scope of the arbitration proceedings, alleging the matter should be adjudicated in the trial court because of limitations imposed on the arbitrator's powers by the OA. Investors believed the validity of the OA and its amendments and restatements was an issue that the trial court should determine.[3] Developers contended the arbitrator had authority to hear all issues presented by the parties.

The arbitrator agreed with Developers, finding that the language of the arbitration provision in the OA was clear, requiring that " '. . . any dispute or claim arising out of the Operating Agreement, including breaches thereof, or claims that it (the operating agreement) is voidable or void, or otherwise invalid, be submitted to arbitration' as set forth in Paragraph 14.10 in both the original and the restated agreements." Investors argued that the arbitrator would be required to amend or revise terms of the OA in order to arbitrate the claims, but the arbitrator disagreed. He found that the OA authorized him to "decide issues of void, or voidable provisions based on fraud or misrepresentation under California law. . . . In effect, the agreement provides that the [arbitrator] has the same powers as a court."[4]

Following an eleven-day hearing, at which he took evidence, including testimony from 23 witnesses, the arbitrator issued a final interim award in February 2017. The

---

[3] That motion and the related pleadings submitted to the arbitrator by the parties are not included in the record on appeal designated by the parties. This court's summary of the proceedings is based on the information included in the arbitrator's written decision and award.

[4] The arbitrator's final interim award states, "In effect, the agreement provides that the court has the same powers as a court." In context, this is a clear typographical error. The arbitrator was discussing his own powers relative to those of the trial court.

arbitrator found that Investors were "entitled to an Award voiding their acquisition of a membership in the 40 Main Street Offices, LLC based upon the negligent representations made by the Sorensens, setting aside and rescinding the 40 Main Street Development Agreement as to them[,] and a return of their investment with interest at the legal rate from May of 2007." Because not all of the members had joined in the law suit, the arbitrator determined he could not set aside the entire OA for fraud, misrepresentation, and mismanagement. However, he did confirm that Investors were entitled to an award, finding that they could "rescind the acquisition of their memberships in the company and, by way of damages, [obtain] a return of their investment with interest. . . ."

After issuance of the final interim award, Developers asked the arbitrator to amend the award on the grounds that it inappropriately allowed interest to run from the date of the Investors' investments, rather than the date they filed the complaint—the equivalent of the rescission demand. Following a hearing in April 2017, the arbitrator denied the motion to amend, finding that "the interest award of the legal rate from the date of the damages is compelled by both the law and, as importantly, the [OA], Paragraph 14.20."[5]

In July 2017, the arbitrator issued a final award, incorporating his previous rulings. He confirmed that Investors were entitled to an award of $1,136,000 in principal damages, plus simple interest at the legal rate of 10 percent, which from May 10, 2007, to May 9, 2017, amounted to $1,113,600. Investors filed a petition in the trial court to confirm the arbitration award. Developers subsequently petitioned to vacate the award, in part on the grounds that the arbitrator exceeded his authority by awarding rescission as well as interest of 10 percent per annum from the date of Investors' investment.

---

[5] Paragraph 14.20 of the OA includes the following provision: "Any judgment or order entered in [an action concerning a dispute between the Company and the Members or among the Members] shall contain a specific provisions [*sic*] for the recovery of attorney fees and costs incurred in enforcing such judgment and an award of prejudgment interest from the date of the breach at the maximum rate of interest allowed by law."

The trial court held a hearing on the competing petitions in September 2017, after which it granted Investors' petition to confirm the award and denied Developers' petition to vacate the award. The court determined it did not have authority to review the award based on Developers' claims that the arbitrator exceeded his authority, as an error of law does not provide grounds for judicial review. Pursuant to the trial court's order, it entered judgment in January 2018, voiding Investors' memberships in Main Street and rescinding agreements relating to each of Investors' investments in Main Street. The court ordered Developers to pay damages in the amounts awarded by the arbitrator, and determined the additional interest owed by Developers since May 9, 2017. Developers timely filed a notice of appeal after being served with notice of entry of the judgment, which is appealable pursuant to Code of Civil Procedure section 1294, subdivision (d).

## II. DISCUSSION

On appeal, Developers contend the trial court erred when it declined to vacate the arbitrator's award. They assert that the arbitrator exceeded his authority by 1) awarding rescission, and 2) awarding prejudgment interest at the rate of 10 percent per annum. Code of Civil Procedure section 1286.2 sets forth the bases on which the trial court can vacate an arbitration award; relevant to this appeal, subdivision (a)(4) requires the court to vacate the award if it determines that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." We thus consider whether the arbitrator exceeded his powers.

### A. General Legal Principles

The trial court's ability to vacate an award is limited. It may not simply "vacate awards the court disagrees with or believes are erroneous." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 (*Gueyffier*).) The parties' agreement to arbitrate their disputes generally affords the arbitrator the authority to resolve questions of contract interpretation, fact, and law necessary for the arbitrator to decide the dispute. (*Ibid.*) "Inherent in that power is the possibility the arbitrator may err in deciding some aspect of

7

the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for ' "[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." ' [Citations.]" (*Ibid*.)

The parties can expressly limit the arbitrator's powers, including limiting the remedies the arbitrator can award. Where they do, the arbitrator exceeds his or her authority by ordering a remedy the parties' arbitration agreement expressly forbids. (*Gueyffier*, *supra*, 43 Cal.4th at p. 1185; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375-376, 381 (*Advanced Micro Devices*); *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1056 (*O'Flaherty*).) We review the trial court's decision de novo when determining whether the arbitrator exceeded his powers, giving substantial deference to the arbitrator's assessment of his contractual authority. (*Advanced Micro Devices*, at p. 376, fn. 9; *O'Flaherty*, at p. 1056.) "[T]he critical question with regard to remedies is not whether the arbitrator has rationally interpreted the parties' agreement, but whether the remedy chosen is rationally drawn from the contract as so interpreted." (*Advanced Micro Devices*, at p. 377.) We do not undertake an independent review of the merits of a particular remedy; doing so would defeat "the parties' contractual expectation of a decision according to the arbitrators' best judgment . . . ." (*Id*. at p. 375.) Rather, we determine whether the arbitrator's interpretation of the agreement provides a basis for the chosen remedy. "In close cases, the arbitrator's decision must stand." (*Id*. at p. 381.)

### B. Rescission

Developers contend the remedy of rescission was not allowed under the parties' arbitration agreement, which precluded the arbitrator from awarding remedies that were either prohibited by the terms of the OA, or "not available in a court of law." They argue

8

that rescission was not a remedy that would have been available in a court of law, because Investors did not satisfy the statutory criteria to obtain such a remedy.[6]

Developers rely primarily on *O'Flaherty*, a case involving the dissolution of a law partnership, where the appellate court determined that an arbitrator exceeded his authority by ordering that the withdrawing partners forfeited their partnership capital accounts. (*O'Flaherty*, *supra*, 115 Cal.App.4th at pp. 1056-1061.) The partnership agreement explicitly provided that capital would be returned to withdrawing partners and did not include a provision allowing for forfeiture. (*Id*. at pp. 1057-1058.) The Uniform Partnership Act, which governed the partnership, did not include a provision authorizing forfeiture of capital accounts as a remedy. (*Id*. at p. 1057.) Moreover, a review of relevant caselaw revealed that forfeiture was not an available remedy in disputes related to partnership accounts. (*Id*. at p. 1059.) The appellate court thus concluded that the award contradicted the provision of the arbitration agreement providing that the arbitrator could not "grant any remedy which is either prohibited by the terms of this Agreement, or not available in a court of law." (*Id*. at p. 1057.)

The contractual language restricting the available remedies in *O'Flaherty* specifying that the arbitrator had no power to "grant any remedy . . . not available in a court of law" is identical to that in the arbitration agreement before us. Arguing that the

---

[6] "[T]o effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind: [¶] (a) Give notice of rescission to the party as to whom he rescinds; and [¶] (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so. [¶] When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." (Civ. Code, § 1691.) A delay in giving notice or in offering to restore benefits to the other party does not automatically preclude relief based on recission. (See Civ. Code, § 1693.)

cases are thus similar, Developers contend we should follow the logic of *O'Flaherty* to conclude that the arbitrator here exceeded his authority in ordering rescission because recission was not "available in a court of law" to Investors. Developers argue that Investors did not take the steps to "effect a recission" required by Civil Code section 1691, as they did not give prompt notice of rescission and did not offer to restore to Developers everything of value they received under the contract. They also contend that Investors did not plead recission in their amended complaint.

We find *O'Flaherty* distinguishable. There, forfeiture was prohibited as a remedy under both partnership law as expressed in statutes and case authorities, and under the terms of the partnership agreement. No act of pleading or proof by the plaintiffs could render the forfeiture remedy available in the partnership dissolution action. (*O'Flaherty*, *supra*, 115 Cal.App.4th at p. 1057.) Here, Developers concede that rescission is a remedy "available in a court of law" when a party to a contract believes it has been injured by fraud or breach. Rather, Developers argue that while Investors in theory could have pleaded and proved recission as a remedy for breach of contract or fraud, they did not satisfy the necessary legal steps to obtain that available remedy.[7] In *O'Flaherty*, the forfeiture remedy was not available in a court of law to redress the claim. Here,

---

[7] Investors contend they did plead recission prior to arbitration, if not in their amended complaint, then in the demand for arbitration submitted to the arbitrator, in which they stated, "The relief requested of the Court includes the nullification of the fraudulently induced Operating Agreement[,] any amendments and restatements of it, the return of Claimants' full investment amounts plus interest or a lien on the property for that value, inspection and accounting rights, attorney fees, other actual damages, punitive damages, and any other relief the Court may deem appropriate." "When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances or (b) asserting such rescission by way of defense or cross-complaint." (Civ. Code, § 1692.)

Developers dispute whether Investors satisfied the prerequisites to apply the remedy of recission that was available to them.

Whether Investors properly pursued the recission remedy available to them was a determination that was within the arbitrator's purview. Developers do not cite any legal authority holding that an arbitrator who wrongly applies the laws of pleading and proof relevant to a remedy exceeds his authority. Whether or not recission was a remedy appropriately applied based on the pleadings and evidence presented at arbitration was an issue of law and/or fact for the arbitrator to determine. To the extent the arbitrator committed any error in so deciding, such error is not reviewable on appeal. (See *Gueyffier*, *supra*, 43 Cal.4th at p. 1184.)

The holding in *Shahinian v. Cedars-Sinai Medical Center* (2011) 194 Cal.App.4th 987 (*Shahinian*) further supports our conclusion that the arbitrator did not exceed his authority by granting recission as a remedy, even if doing so constituted a mistake of law or fact. In *Shahinian*, the arbitrator awarded a significant amount of punitive damages in a breach of contract claim, which the trial court confirmed in a judgment. (*Id*. at p. 999.) On appeal, the appellant argued that the amount of the award violated public policy limits on punitive damages awards, such that it violated the arbitration agreement, which limited the arbitrator's powers to remedies that " 'would have been available to the parties had the matter been heard in court. . . .' " (*Id*. at p. 1006.)

In determining that the arbitrator had authority to issue the award, the appellate court distinguished the case from *O'Flaherty*. "The arbitration agreement here is nothing like the one in *O'Flaherty*, where the remedy of forfeiture of capital accounts was prohibited both by the partnership agreement and by California partnership law. . . . Here, the agreement gave the arbitrator broad authority to grant remedies available in court, and made no reference to punitive damages or to any limitation on the amount of such an award. If the punitive damages award was excessive, the arbitrator's error would be no different from other errors of law, which are generally not reviewable 'whether or

11

not such error appears on the face of the award and causes substantial injustice to the parties.' [Citation.] Moreover, where the arbitrator has made a legal error ' "in either determining the appropriate law or applying it," ' the parties may obtain court review of the merits 'only if the arbitration agreement expressly provided that the arbitrator's errors of law were reviewable in court.' [Citation.] . . . There was no such agreement here." (*Shahinian*, *supra*, 194 Cal.App.4th at pp. 1006-1007.) The arbitration agreement before us provided similarly broad authority to the arbitrator to award remedies, and did not include any provision that allowed the arbitrator's errors of law to be reviewed in court.

The *Shahinian* court based its decision, in part, on the California Supreme Court's holding in *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334 (*Cable Connection*), a case the parties addressed at oral argument. In *Cable Connection*, the Supreme Court determined that, under California law, parties to an arbitration "may obtain judicial review of the merits by express agreement." (*Id*. at p. 1340.) In that case, the parties' agreement provided, "The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error." (*Id*. at p. 1341, fn. 3.) The Supreme Court held that, in order to "take themselves out of the general rule that the merits of the award are not subject to judicial review," the parties must "clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts" and "explicitly and unambiguously" provide for judicial review of such an error. (*Id*. at p. 1361.) In so holding, the court stated, "The desire for the protection afforded by review for legal error has evidently developed from the experience of sophisticated parties in high stakes cases, where the arbitrators' awards deviated from the parties' expectations in startling ways." (*Id*. at p. 1363.)

Developers argue that the arbitrator's recission award here was untoward, supporting the argument that review of the arbitrator's alleged errors is warranted. However, in *Cable Connection* the Supreme Court did not expand review of arbitration

12

awards to generally encompass circumstances wherein a party to an arbitration believes the arbitrator has deviated from the party's expectations. The Supreme Court limited the scope of its decision to confirm that parties to an arbitration can expressly agree to judicial review of legal errors committed by an arbitrator. Developers and Investors did not expressly and unambiguously agree that such legal error would be subject review on appeal. *Cable Connections* does not justify review of the merits of the arbitrator's decision.

As was the case in *Shahinian*, here the arbitrator awarded a remedy available in a court of law when a party to a contract has been injured by fraud or breach. Developers' attempt to frame the arbitrator's alleged error in applying the law of rescission as an act in excess of the authority given to him by the parties in the OA is unpersuasive. Having determined that rescission was not a remedy precluded by the terms of the OA, we will not review the arbitration award for errors of law or fact.

### C. Prejudgment Interest

Applying the law as set forth above, we similarly conclude that the arbitrator had authority to order prejudgment interest at the legal rate. Developers have not demonstrated that such remedy was not available in a court of law. As they did with their arguments concerning rescission, Developers attempt to frame the arbitrator's alleged errors of law and fact as acts in excess of the arbitrator's authority under the OA.

Developers argue the arbitrator incorrectly interpreted the provision of the OA providing, "Any judgment or order entered in [an action concerning a dispute between the Company and the Members or among the Members] shall contain a specific provisions [*sic*] for the recovery of attorney fees and costs incurred in enforcing such judgment *and an award of prejudgment interest from the date of the breach at the maximum rate of interest allowed by law*." (Italics added.) Developers contend this provision only applies in an action for breach of the OA, whereas the arbitrator's award

13

of rescission and resulting interest was based on findings that Developers made misrepresentations in the project plan.

As we previously observed, we do not consider "whether the arbitrator has rationally interpreted the parties' agreement, but whether the remedy chosen is rationally drawn from the contract as so interpreted." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 377.) We determine whether the arbitrator's interpretation of the agreement provides a basis for the chosen remedy. "In close cases, the arbitrator's decision must stand." (*Id.* at p. 381.) The arbitrator's award of prejudgment interest from the date of Investors' investment in the project is rationally drawn from the contract as interpreted by the arbitrator. To the extent the arbitrator committed an error of law or fact in interpreting the OA, such error is not for us to review on appeal. (See *Gueyffier*, *supra*, 43 Cal.4th at p. 1184; *Shahinian*, *supra*, 194 Cal.App.4th at pp. 1006-1007.)

To the extent the arbitrator based his award of interest on the law pertaining to rescission, rather than the provision of the OA requiring an award of prejudgment interest, Developers' allegations similarly raise issues of error of fact or law, rather than demonstrating that the arbitrator acted in excess of his authority under the terms of the arbitration agreement. Developers do not deny that prejudgment interest is an available remedy at law. Rather, they contend the arbitrator erred both in fixing the date on which interest began to accrue, and in setting the amount of interest at the legal rate of 10 percent, claiming, in essence, that the arbitrator misapplied the law. If the arbitrator made a mistake of law or fact in ordering prejudgment interest, he did so within the confines of the authority given to him by the parties when they agreed on the terms of the OA, such that we are precluded from reviewing the alleged error on appeal. (*Advanced Micro Devices*, *supra*, 9 Cal.4th at pp. 375-377.)

## III.   DISPOSITION

The judgment is affirmed.

14

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.




_____
Danner, J.




Old Trace et. al. v. Sorenson et. al.
No. H045706