Filed 6/24/22  Choe v. Pressed Down CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHUL LIM CHOE et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>PRESSED DOWN, LLC, et al.,<br><br>    Defendants and Respondents. | B313970<br><br>Los Angeles County<br>Super. Ct. No. 21STCP00191 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

The Wagner Firm, Avi Wagner and Charissa Morningstar for Plaintiffs and Appellants.

Jamison Empting Cronin, Kevin D. Jamison, Erin N. Empting, and Justin F. Cronin for Defendants and Respondents.

_____

Chul Lim Choe and Protech Minerals, Inc. appeal from a judgment confirming an arbitration award. They contend a remedial provision exceeds the arbitrator's powers and ask us to vacate or to correct it. We affirm.

I

The arbitration spanned 10 days and involved hundreds of exhibits, most of which are absent from the appellate record. Following our Supreme Court's lead, we draw from the arbitrator's final award in outlining the parties' dispute, and we take the arbitrator's findings as correct. (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367, fn. 1 (*Advanced*).) Because this appeal mainly attacks one paragraph of the 45-page final award, we focus on facts relating to the disputed paragraph.

Choe ran a family-owned minerals processing business called Protech Minerals, Inc. We refer to this entity and Choe together as Seller.

In 2016, Choe embarked on selling the business to Michael Mattox and Mattox's new company, Protech Minerals, LLC. We refer to the buying parties as Buyer.

There were multiple related contracts between the parties, including separate agreements concerning business operations and the sale of real property.

The current dispute concerns the sale of various business assets of Protech Minerals, Inc. in exchange for, among other things, a $3.2 million promissory note and an equity interest in the new company. As the arbitrator explained, "The essence of the dispute is whether certain assets were included in the transaction, or whether the assets at issue were to be part of a second sale and escrow."

The documents providing for the sale are the Asset Purchase Agreement (the Agreement) and the First Addendum to this agreement (the Addendum). The two documents bear the same date: June 23, 2016.

Choe signed the transaction documents for Seller. He stayed on for a while to "manage the business" for the new company. In the first half of 2017, he loaned the company $311,625 through three promissory notes. The notes say they are "given in exchange for a loan made solely for a commercial business purpose."

This appeal concerns these postclosing notes and a hotly contested business asset: the mining claims. The parties also call these "placer mining claims," "placer claims," "surface mining claims," and "BLM Claims." ("BLM" stands for Bureau of Land Management.) Buyer explained that "[a] placer mine is an un-deeded and unpatented mine on federal lands, from which a miner has a right to extract minerals located on the surface." The mines at issue are located in Inyo and Kern counties.

According to Buyer, Protech Minerals, Inc. alone operated the placer mines; the mines were crucial to the business; claims to these mines need to be renewed annually or else they lapse; and individual "locators" hold interests in the mining claims.

The Addendum identifies the relevant mining claims and locators' names.

Seller maintained it did not convey the mining claims under the Agreement and Addendum. Rather, Seller argued, the parties entered into a separate verbal agreement whereby Choe's company would convey the claims in a second escrow in exchange for a tax savings exceeding $1 million.

Buyer maintained it bought the mining claims in full in the original transaction; it knew the mines were crucial to the operation of the business, and they were crucial to the deal. According to Buyer, Choe represented he controlled all of the placer mines and the claimants, who were all family members. Further, the Agreement obligates Seller to cooperate to obtain the approval of third parties after closing, if this became necessary. Seller shirked this obligation, Buyer argued, and then continued to renew the bargained-for mining claims, preventing their transfer to Seller.

Buyer made an arbitration demand alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and various torts by Seller. Buyer sought declaratory and injunctive relief, actual and punitive damages, and specific performance. Seller counterclaimed, alleging financial elder abuse and other causes of action.

The arbitrator sided with Buyer on the key issue—the mining claims. In his October 2020 final award, the arbitrator rejected the second escrow theory and found Seller intended to convey all of the mining claims and these claims were included in the sale. The arbitrator also found Choe had engaged in "over the top" conduct that kept the bargained-for mining claims out of Buyer's reach. In passing, the arbitrator noted Choe's relatives' claims were "sham claims."

On the key issue, the arbitrator denied damages but granted Buyer injunctive relief and specific performance of the Agreement and Addendum. The injunctive relief portion of the award spanned six pages. Seller challenges one part of this relief—paragraph 22—which reads:

22. Protech Minerals Inc. and Choe are restrained from taking any action to collect upon any of the

obligations owed by any of the Claimants or any guarantee of any obligation owed by any of the Claimants, including without limitation any of the notes executed in connection with the closing of the Asset Purchase Agreement or any of the three promissory notes executed by Protech Minerals LLC post-closing and payable to Choe, until such time as one of the following occur:

a. Protech Minerals Inc. delivers to Protech Minerals LLC quitclaim deeds for Tecopa #2, 3, 4, 10 and 11, the Tecopa Millsite and the White Point No. 3 Claims; and the BLM LR 2000 system shows that the Tecopa #1, 2, 3, 4, 10, and 11, the Tecopa Millsite and the White Point No. 3 Claims are held solely in the name of Protech Minerals LLC;

b. The BLM LR 2000 system shows that the Tecopa #2, 3, 4, 10 and 11, the Tecopa Millsite and the White Point No. 3 Claims are closed on all areas covered by the aforementioned claims that are open to mining claim location, with no intervening claims of Protech Minerals, Inc., Choe, any directly or indirectly related party, or anyone claiming by or through them (or any of them); . . .

Condensed for clarity, paragraph 22 bars Seller from collecting on notes (including the three postclosing promissory notes) until the relevant government database shows the disputed mining claims either are held solely by Protech Minerals, LLC or are closed altogether. Or as Buyer phrases it, the provision stays enforcement of the notes until Seller conveys the mining claims as agreed or allows them to lapse.

Seller challenged this part of the award as exceeding the arbitrator's powers and petitioned the trial court to vacate or to correct it. Buyer cross-petitioned to confirm the award.

The trial court denied Seller's petition, granted Buyer's, and entered judgment in accord with the award.

## II

Seller argues the injunctive relief in paragraph 22 exceeds the arbitrator's authority in two ways. First, it improperly requires nonparties to forfeit their interests in the mining claims before Seller may collect on debts owed by Buyer, even though the locators were not parties to the underlying transaction or the arbitration and did not agree to arbitrate their claims. Second, the provision reaches promissory notes that are unrelated to the contract and are beyond the arbitration's scope.

We reject both arguments and explain why in the next two sections. But first we provide some legal background.

Arbitration is a matter of contract. The parties' agreement delineates the arbitrator's powers. (*Advanced*, *supra*, 9 Cal.4th at p. 375.) Parties may move to vacate or correct awards that exceed these powers. (*Ibid.*; Code Civ. Proc., §§ 1286.2, subd. (a)(4) & 1286.6, subd. (b).) Awards that decide an unsubmitted issue or provide an unauthorized remedy are subject to this attack. (*Advanced*, at p. 375.)

We independently review the *trial court's* decision regarding arbitrator overreach. But we accord substantial deference to *arbitrators'* determinations of their authority, including their authority to fashion remedies, and we resolve doubts in their favor. (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 347–348; *Advanced*, *supra*, 9 Cal.4th at p. 376.) We generally do not review the merits of the dispute, the sufficiency of the evidence, or the arbitrator's reasoning; nor may we review the award for factual or legal error. (*Roehl*, at p. 347.) The principle of arbitral finality and the practical demands of picking

6

an appropriate remedy demand such deference. (*Advanced*, at p. 376.)

A

The arbitrator did not exceed his powers by awarding injunctive relief that may affect the interests of nonparty locators.

The parties' contract required them to arbitrate any dispute relating to the Agreement or its breach. It empowered the arbitrator "to enter injunctive and other relief." Similarly, the JAMS arbitration rules adopted by the agreement provide for such relief.

The disputed injunction enjoins *Seller* from collecting on various notes until such time as *Seller* fully tenders the mining claims or enables them to close. It does not enjoin the locators. It does not require them to do anything or prevent them from doing anything. Even Seller can comply by doing nothing—by simply allowing the claims to lapse. Only Seller bears the consequence of noncompliance with the injunction.

The parties submitted to the arbitrator the key issues of whether Seller represented it had the authority to convey the mining claims and whether it agreed to convey them in full in the Agreement and Addendum. The arbitrator found for Buyer on these issues. Seller would have us delve into the merits and overturn these findings, something we may not do. (See *Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1186 (*Gueyffier*) ["it was for the arbitrator to find the facts, not for the superior court or this court"]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28 [arbitrators act within their powers in resolving all contested issues of law and fact presented and do not exceed their powers by erring].)

The same is true of Seller's claim the arbitrator inappropriately labeled the locators' interests "sham" interests: we cannot overturn this descriptor as erroneous.

Seller's position in the arbitration undermines its current concern for nonparty locators' interests. Seller tendered the issue of its authority to sell the mining claims because it argued these claims were part of a supposed second escrow whereby Choe would convey them to Buyer in a "later separate deal" for additional consideration. Buyer repeatedly emphasizes this point on appeal, but Seller does not answer it. Seller's refusal to engage the issue is telling.

Seller's claim of arbitrator overreach is simply a claim the arbitrator was wrong in adopting Buyer's view of the contract and the events surrounding its execution. We may not review such a claim. (See *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787 ["Having submitted the fees issue to arbitration, plaintiffs cannot maintain the arbitrators exceeded their powers . . . by deciding it, even if they decided it incorrectly."]; *VVA-TWO LLC v. Impact Development Group, LLC* (2020) 48 Cal.App.5th 985, 1005 ["Courts must defer to an arbitrator's assessment of the merits—here, the interpretation and enforcement of the [contracts]."].)

Paragraph 22 of the award seeks to compel performance of the parties' bargain: the complete transfer of the mining claims. This was a central issue, if not the central issue, of the arbitration.

This case is not like *Comedy Club, Inc. v. Improv West Associates* (9th Cir. 2009) 553 F.3d 1277, where the arbitrator exceeded his authority by enjoining nonparty "Affiliates"—defined broadly to reach "collateral relatives" such as former

spouses and grandparents of company principals—from opening or operating other comedy clubs in the United States. (*Id.* at pp. 1282–1283, 1286–1288.) The injunction here enjoins only Seller.

B

The arbitrator similarly did not exceed his powers by imposing injunctive relief implicating promissory notes that postdate the Agreement and Addendum.

Arbitrators have leeway in fashioning remedies to address the harm flowing from a party's breach of contract. (*Advanced, supra*, 9 Cal.4th at pp. 374, 386.) They may draw on their "flexibility, creativity and sense of fairness" and order relief beyond what the contract contemplates and beyond what a court could award, provided the contract does not forbid such relief. (*Id.* at pp. 374, 376, 382, 384, 386; see also *id.* at p. 374 ["Passage of time and changed circumstances may have rendered any remedies suggested by the contract insufficient or excessive."].)

California courts simply require the remedy be rationally related to the parties' contract and to the breach. A link to "a plausible theory of the contract's general subject matter, framework or intent" can suffice. (*Advanced, supra*, 9 Cal.4th at p. 381.) The required link to the breach is met where the award aims to compensate for or alleviate the effects of the breach. (*Id.* at p. 381, fn. 12.)

We accord deference to the arbitrator's choice of remedy, as the arbitrator is better positioned than we are to decide what relief is just and fair under the circumstances. (*Advanced, supra*, 9 Cal.4th at pp. 374–375, 383; see also *Taylor v. Van-Catlin Construction* (2005) 130 Cal.App.4th 1061, 1066 [court may not vacate or correct award merely because it disagrees with

9

arbitrator's chosen remedy].) "In close cases the arbitrator's decision must stand." (*Advanced*, at p. 381.)

Here, the Agreement permitted the arbitrator to award injunctive relief. It imposed no limits on this "inherently flexible" remedy. (See *Advanced*, *supra*, 9 Cal.4th at p. 390.)

Seller asserts it did not seek relief on the postclosing notes, the award otherwise does not concern these notes, the notes do not mention the Agreement or the Addendum and vice versa, and the notes do not contain an arbitration clause. While all of this may be true, Seller submitted the postclosing notes into evidence as part of the arbitration and incorporated them into its case. The notes are tied to the apparent intent of the parties' transaction—to enable Buyer to assume Seller's mining business. The Agreement required cooperation between the parties postclosing. The notes themselves evidence a continuing relationship between the parties to enable continued operation of the business.

The arbitrator found Choe had frustrated the contract and further found his postclosing conduct was "over the top": Choe continued to submit placer claims with the relevant entities, refused to have his relatives cooperate in signing over their claims, and interfered with the mining activities of Protech Minerals, LLC by posting no trespassing signs, intimidating its workers, and secreting equipment that was part of the transaction.

The arbitrator concluded specific performance, not damages, was the way to make Buyer whole. But due to the aggravated nature of Choe's breach and persistent interference, the arbitrator sensibly concluded something more was needed to make Seller fulfill its contractual obligations and to act promptly.

Tying collection on the notes to Seller's contractual performance was the "something more" the arbitrator decided was necessary. It raised the stakes for Seller and averted intransigence. This creative tool restored Buyer's benefit of the bargain and prevented further damage from Seller's breach and Choe's continued meddling.

Buyer's arbitration demand claimed Seller knew Buyer was relying on the successful operation of the business to generate distributions to pay its obligations yet embarked on a scheme to frustrate the continued operation of the business, including by pursuing mining rights it had agreed to transfer. The arbitrator did not exceed his authority in believing Buyer.

The arbitrator did not reach beyond the parties' submission to adjudicate the postclosing notes. The notes only come into play should Seller fail to comply with the award by performing the contract. As mentioned, Seller can perform by doing nothing.

Including the notes as part of the injunctive relief awarded Buyer was sensible and equitable. This relief rationally relates to the underlying transaction and to the effect of Seller's breach.

"Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation." (*Gueyffier*, *supra*, 43 Cal.4th at p. 1182.) The arbitrator acted within his authority here.

11

## DISPOSITION

We affirm the judgment and award costs to the respondents.

WILEY, J.

We concur:

STRATTON, P. J.

GRIMES, J.