Filed 5/21/25  Evergreen Capital Management v. Pacific Coast Energy Co. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| EVERGREEN CAPITAL MANAGEMENT, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PACIFIC COAST ENERGY COMPANY, LP et al.,<br><br>    Defendants and Respondents. | B330498<br><br>(Los Angeles County Super. Ct. No. 20STCV26290)<br><br>**REDACTED OPINION FOR PUBLIC VIEW***|

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Carolyn B. Kuhl, Judge.  Affirmed.

---

*       This case involves material from a sealed record.  In accordance with California Rules of Court, rules 8.45, 8.46(g)(1) and (2), we have prepared both public (redacted) and sealed (unredacted) versions of this opinion.  We order the unredacted version of this opinion sealed.

Scott + Scott, Maxwell Huffman, John T. Jasnoch, Thomas L. Laughlin IV, Jing-Li Yu and Matthew Peller for Plaintiff and Appellant.

Baker & Hostetler, Victoria Weatherford; Quinn Emanuel Urquhart & Sullivan, Marc L. Greenwald and Dylan C. Bonfigli; Sashe D. Dimitroff and Alexandra L. Trujillo for Defendants and Respondents.

* * * * * *


Evergreen Capital Management, LLC (appellant) challenges two orders of the superior court: an order confirming a final arbitration award and entering judgment in favor of respondent Pacific Coast Energy Company LP (PCEC), and a subsequent order sustaining the demurrer of respondents PCEC, Newbridge Resources, LLC (Newbridge) and Klaus Hasbo, resulting in a final judgment dismissing appellant's remaining claims.[1]  This court granted appellant's unopposed motion to consolidate the two appeals.  As set forth below, we find no error and affirm the order confirming the arbitration award and subsequent judgment of dismissal.

---

[1]  PCEC, Newbridge and Hasbo will be collectively referred to as "respondents."

## FACTUAL BACKGROUND

**The trust and conveyance agreement**

PCEC owns and operates approximately 400 oil and gas wells in California.[2]  On May 8, 2012, PCEC formed the Pacific Coast Oil Trust (trust) by entering into a trust agreement with the trustee.[3]  The trust is a Delaware statutory trust organized under the Delaware Statutory Trust Act.  By its terms, the trust agreement is to be construed pursuant to Delaware law.  PCEC created the trust to acquire and hold a net profits interest (NPI) in proceeds from the wells, plus an overriding royalty interest (collectively, conveyed interests).

PCEC transferred the conveyed interests to the trust pursuant to a "Conveyance of New Profits Interests and Overriding Royalty Interests" (conveyance agreement).  Under the conveyance agreement, PCEC (1) operates certain underlying properties; (2) accounts for all operating costs and expenses, including present and future "plugging and abandonment" expenses (known as "ARO" expenses); and (3) makes a monthly NPI distribution to the trust.  The conveyance agreement establishes the NPI calculation and permits PCEC to deduct certain costs from gross profits, including "all costs accrued for future plugging and abandonment of any well or facility."  Pursuant to the conveyance agreement, PCEC is required to operate as a reasonably prudent operator.  By its terms, the conveyance agreement is governed by California law.

---

[2]    Newbridge is the general partner of PCEC.  Hasbo is Newbridge's board chairman.

[3]    The trustee is the Bank of New York Mellon Trust Company, N.A. (trustee).

3

Every month, PCEC was required to calculate the revenue attributable to each well from the sale of oil or natural gas, deduct the expenses incurred or accrued to produce and sell that oil and natural gas, then distribute the net profits, if any, to the trust.

The trust's ownership is divided into units, which are akin to shares of corporate stock. After PCEC makes its monthly distribution to the trust, the trustee pays out pro rata distributions to the trust's unitholders based on their individual ownership interest.[4] If gross profits are less than cost deductions during a monthly period, no NPI payment is distributed to the trust, and the difference between the gross profits and deductions is carried forward as a debit balance that must be paid off in future periods before the trust receives its next NPI payment.

The trustee's duties to the trust unitholders are set forth in the trust agreement. Section 3.05 of the trust agreement limits unitholders' ability to bring claims on behalf of the trust or the trust estate. It states: "Trust Unitholders shall have no power to prosecute any claim of the Trust or the Trust Estate against any Person other than to prosecute a claim to compel performance by the Trustee on behalf of the Trust or the Trust Estate."

**May 2012 through September 2019**

From May 2012, the time of the trust's inception, until September 2019, when current management bought the company, the trust paid more than $2 million in distributions for seven out of eight years. Even in its one lean year, 2016, the trust paid $229,000 in distributions. Respondents characterize these payments as overpayments due to a failure to deduct pro

---

[4] Appellant is a unitholder.

rata the ARO liability from trust distributions.  Under the trust agreement, the trust was to dissolve if there were two consecutive years of less than $2 million in distributions.

**Changes with new management in September 2019**

Newbridge completed its acquisition of PCEC in September 2019.  The new management reviewed the future ARO and estimated the total future undiscounted amount of those costs attributable to the trust at approximately $56.7 million.  PCEC shared this figure with the trust in November 2019, and it was recorded in the trust's Securities and Exchange Commission Form 8-K.  Appellant asserts PCEC then settled on the plan to deduct from the trust's profits roughly 30 years of ARO costs even though this approach was entirely unsupported by generally accepted accounting principles (GAAP).  Appellant argues it is undisputed that under GAAP and industry standards, ARO as an expense is calculated by taking the total ARO and breaking it up into a schedule that allocates ARO costs on a monthly basis over the useful life of the oil wells.

PCEC hired Moss Adams, an independent financial consultant, to verify PCEC's future ARO cost estimates and calculate the updated ARO liability by determining the net present value of those future ARO costs pursuant to GAAP.  By the end of 2019, Adams concluded the updated, discounted ARO liability for the underlying properties was $45,695,643.  PCEC shared this updated data with the trustee, who reported it in the trust's Form 8-K.

PCEC accrued the estimated net value of its future ARO costs by recording them as liability on its books at year end.

After doing so, it deducted those costs in the NPI calculation in January 2020 and thereafter.

On December 29, 2020, the trust disclosed Martindale's recommendations publicly and disclosed its written communication to PCEC containing Martindale's recommendations. On March 24, 2021, the trust disclosed that PCEC declined to implement the trustee's requests.

Appellant alleges respondents caused the trust to file false and misleading financial statements with the Securities and Exchange Commission and trust unitholders in violation of the trust agreement. These false and misleading statements paint a picture of the trust as being under decline, although the trust is fundamentally strong and the sole reason for the trust's precarious existence is respondents' misconduct in starving the trust of revenues and carrying out GAAP violations.

Since Newbridge's takeover of PCEC, the trust paid distributions only once—a token amount in January 2020. Appellant argues PCEC's improper accounting and self-interested abandonment of the plan to divest West Pico continue to harm the trust and unitholders.[5]

---

[5] Pursuant to the trust agreement, the trust is now dissolved because it received less than $2 million in annual cash proceeds for the years 2020 and 2021. The trustee is in the process of winding down the trust pursuant to section 9.03 of the trust agreement.

## PROCEDURAL HISTORY
### Commencement of the action and amended complaints

Appellant filed its verified class action complaint against the trustee and PCEC on July 8, 2020. Appellant alleged breach of the implied covenant of good faith and fair dealing against PCEC and a claim for breach of the trust agreement against the trustee.

On July 15, 2021, appellant asked the court for a temporary restraining order or, in the alternative, order shortening time for motion for preliminary injunction to prevent the trust from dissolving. The trial court granted appellant's request, enjoining the parties from taking any action towards dissolution of the trust until the court either granted or denied appellant's motion for preliminary injunction or until further order of the court. In so holding, the trial court noted the language of section 3.05, subdivision (a) of the trust agreement did not clearly preclude the derivative action, but was ambiguous.

On August 19, 2021, appellant voluntarily dismissed the trustee from the case without prejudice. However, the superior court retained jurisdiction over the trustee "for purposes of entering a preliminary injunction regarding dissolution of the Trust, a final order regarding dissolution of the Trust, or any other orders relevant to the dissolution of the Trust."

On December 8, 2021, the trial court denied appellant's motion for a preliminary injunction on the ground that appellant lacked standing as the matter was not properly pled as a derivative action.

On December 8, 2021, appellant amended its complaint against PCEC. Appellant pled breach of the conveyance

agreement, derivatively, on behalf of the trust; breach of the implied covenant of good faith and fair dealing in the trust agreement, derivatively, on behalf of the trust; and breach of the implied covenant of good faith and fair dealing in the trust agreement, directly, on behalf of the trust unitholders, against PCEC. In January 2022, the parties stipulated to arbitration.

On January 28, 2022, appellant asked the superior court for leave to amend its complaint to add claims for tortious interference with contract against Hasbo and Newbridge. The court granted appellant leave to file the second amended complaint (SAC).

**Arbitration**

Appellant's derivative claims against PCEC went to arbitration pursuant to article XI of the trust agreement. The arbitration commenced in January 2022. On April 7, 2022, the arbitration panel denied appellant's request for a preliminary injunction against PCEC on the ground that appellant lacked standing. The panel noted in the trust agreement, the trustee and PCEC agreed that the trustee alone could bring claims of the trustee or the trust estate. For that reason, appellant's derivative claims were not permitted.

In an order dated May 23, 2022, the panel denied appellant's motion for reconsideration of the panel's April 7, 2022 order. The panel confirmed its conclusion that appellant lacked standing to bring the pending claims in the name of the trust. The panel denied PCEC's request for fees.

Appellant then asked the tribunal for leave to amend its claim to add direct claims against the trustee under section 3.05 of the trust agreement in order to force the trustee to sue PCEC. The tribunal permitted the amendment and on June 20, 2022,

8

appellant filed its amended statement of claim, naming the trustee and asking the arbitration panel to compel the trustee to bring claims against PCEC. As part of its prayer for relief, and as permitted under the arbitration agreement, appellant requested an award of attorney fees in its amended statement of claim. On October 31, 2022, the panel granted the trustee's motion to dismiss with prejudice.

The parties then submitted briefing to the panel regarding fee shifting. On February 1, 2023, the panel issued a final award. The panel awarded the trustee attorney fees against appellant in the amount of $282,878.60 and ordered appellant and PCEC to bear their own expenses and costs, including attorney fees.

On March 17, 2023, PCEC moved to confirm the final award. On May 1, 2023, the superior court confirmed the final arbitration award.

**Superior court proceedings against Newbridge and Hasbo**

Appellant's claims against Newbridge and Hasbo, set forth in the SAC, remained pending in superior court. On May 10, 2023, respondents demurred to all four causes of action in the SAC. Respondents argued the first and second causes of action should be dismissed because they were resolved in arbitration. As to the third cause of action against Newbridge and Hasbo for tortious interference with contract, respondents argued the claim failed for three reasons: (1) it was barred by section 3.05 of the trust agreement; (2) it was time-barred due to appellant's failure to allege any facts invoking the discovery rule; and (3) it was barred by the manager's and financial interest privileges. As to the fourth cause of action, a direct claim against PCEC, respondents demurred on the ground that any such claim was actually derivative in nature.

9

The parties fully briefed the issues and appeared for a hearing on July 11, 2023. On July 13, 2023, the superior court filed an order sustaining respondents' demurrer as to all causes of action without leave to amend. As to the first and second causes of action, appellant did not contest that such claims were resolved in arbitration. As to the second cause of action against Newbridge and Hasbo, the court sustained the demurrer on the ground that it was time-barred. The court noted, "[Appellant] does not dispute that California's two-year statute of limitations applies to the Third Cause of Action." Nor did appellant dispute that all elements of the tortious interference claim against Newbridge and Hasbo were complete by November 2019. The time for bringing the third cause of action thus ran in November 2021. Thus, the SAC, filed April 8, 2022, was untimely. The court noted, "Because [appellant] invoked the discovery rule when seeking leave to file the SAC, [appellant] was aware of its need to plead facts justifying application of the discovery rule. . . . [Appellant] nonetheless failed to allege facts sufficient to show both (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." The fourth cause of action, which was a direct, rather than derivative, claim against PCEC, was dismissed because appellant was limited to pleading derivative claims against PCEC.

**Appeals**

On May 22, 2023, appellant filed its notice of appeal from the court's order confirming the arbitration award. On August 9, 2023, appellant filed its notice of appeal of the court's ruling on the demurrer. On November 1, 2023, this court consolidated the two appeals.

10

## DISCUSSION

### I.    Demurrer

Appellant first challenges the trial court's ruling on respondents' demurrer to the SAC.  Appellant asserts the trial court erred in sustaining the demurrer when appellant stated timely and meritorious claims against Newbridge and Hasbo for their tortious interference with the rights of the trust and its unitholders.

### A.    *Applicable law and standard of review*

An order sustaining a demurrer is reviewed de novo.  (*SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 152.)  We must exercise our independent judgment as to whether, as a matter of law, the complaint states a cause of action under any legal theory.  (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080.)  When evaluating the complaint, we construe it liberally and take all properly pleaded facts as true.  (*Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943.)  "[A]ll material facts pleaded in the complaint and those that arise by reasonable implication, but not conclusions of fact or law, are deemed admitted by the demurring party."  (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517.)  We do not consider "opinions, speculation or allegations which are contrary either to law or to judicially noticed facts."  (*Long Beach Equities, Inc. v. County of Ventura* (1991) 231 Cal.App.3d 1016, 1024.)

If the judgment is supported by any grounds stated in the demurrer, whether the trial court relied on those grounds or not, the judgment must be affirmed.  (*San Diego City Firefighers, Local 145 v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 605.)

An order denying a request for leave to amend is reviewed for abuse of discretion. (*Jo Redland Trust, U.A.D. 4-6-05 v. CIT Bank, N.A.* (2023) 92 Cal.App.5th 142, 161.) "To show an abuse of discretion, the plaintiff has the burden of demonstrating that 'there is a reasonable possibility the plaintiff could cure the defect with an amendment.'" (*Id.* at p. 162.)

## B. *Statute of limitations*

The trial court determined that appellant's third cause of action for tortious interference with contract against Newbridge and Hasbo was time-barred. The court held, "[Appellant] does not dispute that California's two-year statute of limitations applies to the Third Cause of Action. Nor does [appellant] dispute that, under the allegations in the SAC, . . . all of the elements of the tortious interference claim against Newbridge and Hasbo were complete by November 2019. Barring the application of the discovery rule, the time for bringing the Third Cause of Action thus ran by November 2020 [*sic*]."[6] The court concluded despite invoking the discovery rule, appellant "nonetheless failed to allege facts sufficient to show both (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Thus, respondents' demurrer to the third cause of action was sustained without leave to amend.

---

[6] Presumably the court meant 2021, not 2020. The third cause of action against Newbridge and Hasbo for tortious interference with contract was added in April 2022. Code of Civil Procedure section 339, subdivision 1 provides a two-year statute of limitations for tortious interference with contract. (*Kenworthy v. Brown* (1967) 248 Cal.App.2d 298, 301.)

Appellant makes several arguments as to why the trial court erred.  First, appellant argues Hasbo's and Newbridge's conduct was not discoverable until new information was obtained during fact discovery, therefore the statute of limitations did not begin to run until appellant had reason to know of such facts.  Second, appellant argues Delaware's three-year statute of limitations for tortious interference with contract controls, not California's two-year statute.  Third, even if California's two-year statute applies, appellant argues, Hasbo's and Newbridge's conduct has been continuing and appellant has two years' worth of timely claims under the continuing violations doctrine.  Finally, appellant argues its claim for tortious interference with contract against Hasbo and Newbridge relates back to the time of the original complaint and is timely for that reason.

We discuss each of appellant's claims separately below and conclude appellant's third cause of action for tortious interference with contract against Newbridge and Hasbo was barred.

### 1.    *Discovery rule*

First, appellant argues the statute of limitations was tolled and the discovery rule applies because Hasbo's and Newbridge's conduct was not discoverable until new information was discovered during fact discovery in this matter.  Appellant claims it could not have discovered that Hasbo and Newbridge acted in bad faith until the time that PCEC's former chief executive officer Wood testified under oath as to the self-interested actions of Hasbo and Newbridge.  Appellant asserts Wood made this representation in September 2020.[7]  Appellant argues the precise

---

[7]    In support of this fact, appellant provides a citation only to appellant's reply brief filed in the trial court in support of

13

date its claims against Hasbo and Newbridge became discoverable is a question of fact that is not susceptible to resolution at the pleading stage.[8]

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) Bad faith is not a separate element of the tort. The plaintiff need only plead knowledge of the contract and an intentional act disrupting the contractual relationship.

As the trial court noted, the record shows all the elements of the tort were complete by November 2019. The existence of the contract, and Hasbo's and Newbridge's knowledge of the contract, existed no later than May 2019 when Newbridge acquired PCEC. The intentional act of interference alleged, "directing PCEC to

_____

appellant's motion to amend the complaint. "Citing points and authorities filed in the trial court is not appropriate support for factual assertions in a brief." (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590.) Because appellant has failed to provide a citation to the record showing the date it purportedly discovered Hasbo's and Newbridge's self-interest, appellant has failed to establish the time of discovery for the purposes of application of the discovery rule.

[8]    Appellant cites unpublished Delaware case law in support of this argument, which we decline to address. Appellant has failed to provide any explanation as to why we should consider these Delaware authorities on this point.

14

improperly deduct for the entirety of the ARO at once, instead of on a cost-as-incurred basis," occurred by November 2019 when Hasbo and Newbridge allegedly informed the trustee that it was deducting the ARO costs, thus causing "the Trust Units to plummet." According to the SAC, "[t]he trading price never recovered, and because it spent all the time since November 2019 under $1 per share, it was delisted by the NYSE in August 2020."

"In general, a cause of action for wrongfully induced breach occurs at the date of the wrongful act [citations]." (*Trembath v. Digardi* (1974) 43 Cal.App.3d 834, 836.) "[T]he accrual date could not be later than the actual breach of the contract by the party who was wrongfully induced to breach." (*Ibid.*) Here, the wrongful breach, allegedly induced by Newbridge and Hasbo, occurred in November 2019, as did the damage. Because appellant did not file this claim until April 2022, it was time-barred under California's two-year statute of limitations.

> **2.** *Application of Delaware statute of limitations*

Appellant next argues that Delaware's three-year statute of limitations is applicable to its claim for tortious interference with contract against Hasbo and Newbridge. (Del. Code Ann., tit. 10, § 8106, subd. (a).) Under the Delaware statute, appellant argues, the claim is timely.

Appellant argues the Delaware statute of limitations applies because the trust agreement has a choice of law provision applying Delaware law.[9] Although appellant concedes Hasbo and Newbridge are not signatories to the trust agreement, appellant

---

[9]     We note that appellant claimed Newbridge and Hasbo intentionally interfered with both the trust agreement and the conveyance agreement, which is expressly governed by California law.

15

argues the trust agreement binds Hasbo and Newbridge because "the parent had sufficient control over the subsidiary's activities such that the subsidiary was a mere agent or instrumentality of the parent and the causes of action or claims against the parent arise out of this relationship." (*Cohen v. TNP 2008 Participating Notes Program LLC* (2019) 31 Cal.App.5th 840, 865.) Essentially, appellant argues Newbridge and Hasbo have shown such total control over PCEC that PCEC is their mere agent, and the trust agreement choice of law provision therefore binds Newbridge and Hasbo. (Citing *Wallace ex rel Cencom Cable Inc. Partners II Inc. v. Wood* (Del. Ch. 1999) 752 A.D. 1175, 1183–1184.)

The issue as to whether Hasbo and Newbridge controlled PCEC to the point that they should be considered bound by the trust agreement is a fact issue which should have been determined by the trial court in the first instance. (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811.) Appellant fails to provide a citation to the record showing this argument was raised or argued before the trial court.

Appellant further argues that even if Newbridge and Hasbo were not contractually bound, Delaware's statute of limitations would apply because Delaware has a greater interest in the claims against Hasbo and Newbridge. California applies a "'governmental interest'" choice of law test to determine which state's statute of limitations applies. (*American Bank of Commerce v. Corondoni* (1985) 169 Cal.App.3d 368, 372.) Under that test, a court compares "'the respective interests of the states involved . . . the objective of which is "to determine the law that most appropriately applies to the issue involved.'" (*Ibid.*) Appellant argues that in this case, all such interests run in favor of Delaware.

16

The "governmental interest test" is also an inquiry, which should be made by the trial court in the first instance. (*Chen v. Los Angeles Truck Centers, LLC* (2019) 7 Cal.5th 862, 867.) However, the issue was not addressed by the trial court in this matter. In fact, the trial court stated, "[Appellant] does not dispute that California's two-year statute of limitations applies to the Third Cause of Action."

Respondents argue appellant forfeited the choice-of-law issue by failing to raise it in the trial court. Appellant disagrees. However, in support of its position that the choice-of-law issue was raised in the trial court, appellant cites only its reply brief in support of its motion to amend its complaint. Appellant fails to cite any place in the record where appellant made this argument in opposition to respondents' demurrer. Nor does appellant provide a citation to the record showing appellant filed a motion asking the court to reconsider its order, which did not raise or address the question of the application of the Delaware statute.

The arguments raised by appellant in favor of application of the Delaware statute involve factual issues that should have been addressed by the trial court in the first instance. Because appellant failed to raise these arguments in opposition to respondents' demurrer and did "not dispute that California's two-year statute of limitations applie[d]" during the demurrer proceedings, either before or after the trial court issued its decision sustaining the demurrer, we conclude appellant forfeited this issue on appeal. (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 (*Kern County*).) It was appellant's burden to ensure the trial court considered and ruled upon this issue in the first instance, and appellant's failure to do so constitutes forfeiture. (*Ibid.*)

17

### 3. *Continuous accrual doctrine*

Appellant argues that even if California's two-year statute of limitations applies to its tort claims against Newbridge and Hasbo, appellant would still have two years' worth of timely claims based on the numerous instances that Hasbo and Newbridge have tortiously interfered with the trust and conveyance agreements. Appellant argues the tort at issue was not a single, discrete occurrence but continues to occur month after month through the present as PCEC withholds money from the trust. Without providing a citation to the record showing this issue was raised below, appellant admits the trial court did not address this issue.

Having failed to raise this issue before the trial court, appellant has forfeited it. (*Kern County, supra*, 209 Cal.App.4th at p. 1038.) Further, even if appellant had raised it below, the doctrine is inapplicable. The continuous accrual doctrine applies when the plaintiff has alleged "'a recurring unfair act,'" and "'at least some such acts'" within the applicable limitations period. (*Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1343.) Here, appellant alleges only one such act—Newbridge's and Hasbo's direction to PCEC to deduct its future ARO costs, which took place in or before November 2019. Appellant alleges no facts to show that this alleged intentional tortious act was recurring or that appellant suffered any harm other than that resulting from Newbridge's and Hasbo's initial direction to PCEC regarding the ARO. The harm occurred in November 2019 when PCEC notified the trustee the current undiscounted estimate of future ARO "appears likely to eliminate the likelihood of significant payments to the Trust under its Net Profits Interest beginning in January 2020." When Newbridge and Hasbo carried

18

out the allegedly tortious act—which caused the price of the trust units to plummet, and eliminated the prospect of significant monthly payments—"the cause of action [was] "'complete with all of its elements.""" (*Lederer v. Gursey Schneider LLP* (2018) 22 Cal.App.5th 508, 521.)  According to the allegations, this one-time event occurred in or before November 2019, rendering the continuous accrual doctrine inapplicable.

### 4. *Relation-back*

Appellant next argues the statute of limitations has not run because the new allegations in appellant's SAC relate back to the original complaint.  "The relation-back doctrine requires that the amended complaint must (1) rest on the *same general set of facts*, (2) involve the *same injury*, and (3) refer to the *same instrumentality*, as the original one." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408–409.)  Appellant argues all these elements are met, as appellant's new allegations in the SAC concerned the same general set of facts, alleged the same injury, and alleged the misconduct occurred through the same instrumentality.

Appellant fails to provide a citation to the record showing appellant raised this argument in connection with respondents' demurrer.  However, appellant admits the trial court failed to address the issue.  Appellant cites a portion of its reply brief in support of its motion to amend the complaint showing one paragraph of that brief dedicated to the applicability of the relation-back doctrine.  Respondents argue appellant forfeited this issue by failing to raise it below.  (Citing *Bardis v. Oates* (2004) 119 Cal.App.4th 1, 13, fn. 6 ["New theories of defense . . . may not be asserted for the first time on appeal."].)

19

Regardless of whether appellant has forfeited the issue, it is inapplicable. "The general rule is that an amended complaint that adds a new defendant does not relate back to the date of filing the original complaint and the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed." (*Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 176.) Appellant's SAC added Newbridge and Hasbo as defendants. Newbridge and Hasbo were sued as individual defendants, and there has been no finding of alter ego in this proceeding. Under the circumstances, the allegations in the SAC against Newbridge and Hasbo were time-barred and cannot relate back.[10]

## II.  Confirmation of arbitration award

Appellant challenges the trial court's confirmation of the arbitration panel's fee award. Appellant argues the panel exceeded its powers in awarding the trustee attorney fees against appellant in the amount of $282,878.60. Specifically, appellant argues the panel improperly relied on the arbitration agreement found in the trust agreement, which specifically provides for an award of attorney fees.

---

[10]  Because we affirm the trial court's decision that the statute of limitations bars appellant's tortious interference with contract claims against Newbridge and Hasbo, we decline to address respondents' alternative arguments that the claims are barred by the manager's and financial interest privileges and by section 3.05 of the trust agreement, which provides, "the Trust Unitholders shall have no power to prosecute any claim of the Trust or the Trust Estate against any Person other than to prosecute a claim to compel performance by the Trustee on behalf of the Trust or the Trust Estate."

20

**A.** *Applicable law and standard of review*

Code of Civil Procedure section 1286.2, subdivision (a)(4) provides that court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

"'When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision.'" (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1360.) "'Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error . . . .'" (*Ibid.*)

"An exception to the general rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185.) "'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.] Awards in excess of those powers may . . . be corrected or vacated by the court.'" (*Ibid.*)

Generally, courts give substantial deference to arbitrators' own assessments of their contractual authority. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 373.) This rule is consistent with the general rule of arbitral finality. "A rule of

21

judicial review under which courts would independently redetermine the scope of an arbitration agreement already interpreted by the arbitrator would invite frequent and protracted judicial proceedings, contravening the parties' expectations of finality." (*Ibid.*) Supreme Court decisions "teach that courts should generally defer to an arbitrator's finding that determination of a particular question is within the scope of his or her contractual authority." (*Id.* at p. 372.)

"'In determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority.'" (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1056.)

### B.   *Analysis*

Appellant challenges the fee award on several grounds. First, appellant argues the award violates Delaware law, and the trust agreement was subject to the Delaware law prohibiting such fee-shifting. Further, appellant argues the fee award against it was outside the scope of jurisdiction of the arbitration. As set forth below, we find the arbitration panel reasonably determined the fee award was within the scope of its powers. We therefore defer to the panel's finding.

Article XI(g) of the trust agreement specifies: "The tribunal of arbitrators shall have the authority to assess liability for pre-award and post-award interest on the claims, attorneys' fees, expert witness fees and all other expenses of arbitration as such arbitrators shall deem appropriate based on the outcome of the claims arbitrated."

Appellant argues that despite this provision, Delaware law protects appellant from any liability for attorney fees arising

22

from its claims against the trustee.  Title 12, section 3803, subdivision (a) of the Delaware Code provides that, "[e]xcept to the extent otherwise provided in the governing instrument of the statutory trust, the beneficial owners shall be entitled to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the general corporation law of the State."  Here, the governing instrument is the trust agreement.  Section 4.02 of the trust agreement provides, "the Trust Unitholders shall be entitled, to the fullest extent permitted by law, to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the General Corporation Law of the State of Delaware."  Thus, appellant argues, it is entitled to the protection of Delaware law.

Title 8, Delaware Code section 102, subdivision (f) provides: "The certificate of incorporation may not contain any provision that would impose liability on a stockholder for the attorneys' fees or expenses of the corporation or any other party in connection with an internal corporate claim."  The Delaware Supreme Court has explained, "Section 102(f) prohibits fee-shifting as against stockholders (of stock corporations) in connection with an 'internal corporate claim,' as defined in Section 115."  (*Salzberg v. Sciabacucchi* (2020) 227 A.3d 102, 117.)  Based on these laws and the trust agreement, appellant argues it was protected under Delaware law from any liability for attorney fees arising from its claims against the trustee, and the arbitration panel exceeded its powers in making the award.

The arbitration panel explicitly rejected this argument.  They decided, "The unit holders, by agreeing to section XI(g) of the trust agreement, waived any prohibition to fee shifting

23

protection they believe they were afforded by 8 Del. C. Section 102(f) just as stockholders are permitted to enter into contractual *ex ante* waivers altering a mandatory provision (Section XI(g) of the Trust Agreement. See *Manti Holdings, LLC v. Authenix Acquisition Co.*, 261 A.3d 1199, 1219 (Del. 2021)."[11] The arbitrators' determination was reasonable, given appellant's explicit reliance on article XI in submitting its claims to the panel, and appellant's explicit request for attorney fees within its amended claim. We must give substantial deference to the arbitration panel's legal determination concerning its authority to award attorney fees, therefore we decline to find the panel acted in excess of its authority. (*Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at p. 373.)

Appellant next argues that contrary to the arbitration panel's finding, it did not agree to waive the protections of Delaware law. First, appellant argues the trust agreement is not a bilateral agreement signed by appellant. Unitholders, such as appellant, are not signatories at all. As a result, appellant argues, the trust agreement cannot extinguish appellant's right not to be subject to fee shifting.

Although not a signatory to the trust agreement, appellant stipulated that its derivative claims should be arbitrated pursuant to article XI of the trust agreement. The arbitration panel found that appellant had agreed to be bound by this provision in the trust agreement. The panel noted: "On January 11, 2022, the parties stipulated to a stay of the litigation

---

[11] *Manti Holdings, LLC v. Authentix Acquisition Co., supra*, 261 A.3d at page 1219, footnote 142, acknowledged that fee-shifting provisions are not prohibited in Delaware in contracts such as stockholder agreements.

24

in California Superior Court and to submission of [appellant's] derivative claims against PCEC, including its request for injunctive relief, to arbitration and agreed to be bound by any relief ordered by the arbitration Tribunal." After appellant lost its application for a preliminary injunction against PCEC, the tribunal gave appellant leave to amend its statement of claim to add the trustee as a party and to bring claims against the trustee under section 3.05 of the trust agreement. Appellant's amended statement of claim expressly incorporated by reference its previously filed demand, which referenced article XI of the trust agreement. In its prayer for relief, appellant specifically requested that the panel award "the Trustee, Trust and/or [appellant] pre-judgment interest and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements." Each of appellant's claims against the trustee were based on the trust agreement and the trustee's obligation thereunder to "preserve the Trust's assets and to not act in a grossly negligent manner" as to the unitholders.

Based on the record, the arbitration panel acted rationally in determining appellant had agreed to submit its claims to arbitration pursuant to article XI of the trust agreement and had conceded the panel's authority to award attorney fees. The panel's decision logically arose from appellant's own actions in submitting to arbitration under the trust agreement, invoking the trust agreement, and seeking attorney fees. The panel did not exceed its power in finding appellant's claims subject to the trust agreement, therefore subject to an award of attorney fees.

Finally, appellant argues the arbitration panel did not have jurisdiction to award attorney fees as attorney fees were outside the scope of jurisdiction of the arbitration. Appellant cites

25

*Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 543, for the proposition that "[a]n arbitrator that resolves issues the parties did not agree to arbitrate or awards a remedy the parties did not authorize exceeds the scope of his or her powers." Appellant points out the trial court noted "the Arbitration Agreement provides for arbitration of claims between PCEC and the Trust/Trustee—not of claims between a Trust unitholder and the Trustee." However, the trial court went on to note appellant had chosen to submit its claims against the Trustee "to the arbitration panel pursuant to the Arbitration Agreement, despite the fact that those claims were otherwise not arbitrable under the terms of the Arbitration Agreement."

The arbitration panel determined it had jurisdiction "under the Trust Agreement, the Commercial Arbitration Rules of the AAA and the parties' submissions in the course of this proceeding to decide all issues in this dispute."[12] Given that appellant stipulated its claims should be arbitrated pursuant to the trust agreement; cited the trust agreement as its authority to file its claims in arbitration; and sought attorney fees for itself, the arbitration panel reasonably determined that the fee award was within the scope of its jurisdiction.

Appellant points out "[m]utual assent is required for there to be an enforceable agreement to arbitrate disputes." (Citing *Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 745.)

---

[12] The American Arbitration Association Commercial Arbitration Rules and Mediation Procedures (2013), R-47(d)(ii) specifies, "The award of the arbitrator(s) may include . . . [¶] . . . [¶] . . . an award of attorneys' fees if all parties have requested such an award or it is authorized by law or the parties' arbitration agreement."

26

The record shows appellant consented, on multiple occasions, to submit its claims to arbitration. "[M]utual assent exists when a reasonable person would conclude from the outward conduct of the parties that there was mutual agreement regarding their intent to be bound." (*Id.* at p. 746.) The panel reasonably concluded, from appellant's outward conduct, appellant intended to be bound by the arbitration panel's ruling.

Based on our independent review of the arbitrator's decision, we find the trial court did not err in confirming the arbitration award, including the award of attorney fees against appellant in favor of the trustee.

## DISPOSITION

The judgment is affirmed in full, including the order sustaining respondents' demurrer and the order confirming the arbitration award. Respondents are awarded their costs of appeal.

CHAVEZ, J.

We concur:

LUI, P. J.                                    RICHARDSON, J.

27